202 N.J. Super. 398 (1985)
495 A.2d 166
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EUGENE F. MULCAHY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 18, 1985.
Decided July 10, 1985.
*400 Before Judges MICHELS and PRESSLER.
Charles R. Melli, Jr. argued the cause for appellant (Melli & Doyne, attorneys; Charles R. Melli, of counsel; Patricia L. Hoff, on the brief).
Joseph H. Cerame, Acting Assistant Prosecutor, argued the cause for respondent (Larry McClure, Bergen County Prosecutor, attorney; Joseph H. Cerame, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Eugene F. Mulcahy was found guilty in the Cresskill Municipal Court of operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50(a) and of refusing to submit to an alcohol breath test in *401 violation of N.J.S.A. 39:4-50.4a.[1] The municipal court judge suspended defendant's license for 6 months and fined him $250 for operating the motor vehicle while under the influence of intoxicating liquor and suspended his license for an additional 6 months and fined him an additional $250 for refusing to submit to the alcohol breath test. Defendant appealed to the Law Division where, following a trial de novo on the record below, he was again convicted of both offenses and the same sentences were imposed. The judgment was stayed pending the outcome of the appeal to this court.
The events which led to defendant's convictions occurred on October 7, 1983. According to the State's proofs, at approximately 7:30 p.m. that day, Sean Dunay, a 15-year old boy, was standing near Bondy's Tavern when he saw defendant "driving down Piermont" Road in Cresskill toward Demarest. Dunay testified that as defendant attempted to pull into a driveway "right by Bondy's ... he missed pulling into the driveway and came up on the curb and hit his license plate." Dunay testified that after hitting the curb defendant pulled away from the curb, pulling off his "license plate half way" so that "it was hanging on by one screw." Defendant proceeded down the street, "stopped for a while in the middle of Piermont and then just pulled away and drove away." Dunay further testified that at approximately 9:30 p.m. that same evening he saw defendant again. This time, according to Dunay, defendant "came from the direction of Tenafly," parked by Jolly Nick's, which is next to Bondy's Tavern, and after getting out of his car staggered across Piermont.
At approximately 9:45 p.m. Officers Macchio and McLaughlin of the Cresskill Police Department arrived at the area of Bondy's Tavern. Officer Macchio testified that defendant's car *402 was parked on a sidewalk which was not a parking area. He observed defendant approach the car, enter the car, and take the car key in his right hand. As defendant "started to make his way towards the ignition," Officer Macchio "intercepted the keys from his hand." At that point Officer Macchio arrested defendant for driving under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50.[2] As indicated both on the *403 summons and in the testimony of Officer Macchio this arrest occurred at approximately 10:00 p.m.
The proofs further show that approximately 10 minutes after defendant was arrested for operating his motor vehicle while under the influence of intoxicating liquor, Officer Macchio learned of Dunay's knowledge of the earlier events, at least to the extent that Dunay had observed defendant scraping his license plate on the curb. Dunay had given a statement concerning his observations to Officer McLaughlin. His testimony at trial, however, exceeded the breadth of the information contained in that statement. Apparently, the written statement did not refer to the fact that Dunay observed defendant park the second time and then "[get] out of the car and [walk] across to [him]" or that he saw defendant "staggering." At approximately 10:20 p.m., armed with knowledge of Dunay's observation of defendant's operation of the motor vehicle, Officer Macchio issued a second summons to defendant for refusing to take an alcohol breath test in violation of N.J.S.A. 39:4-50.4a.

I.
Defendant contends that his conviction for operating his motor vehicle while under the influence of intoxicating liquor should be reversed essentially because (1) his arrest was invalid, (2) "the State failed to prove a violation of N.J.S.A. 39:4-50," and (3) "the findings of fact by the ... Law Division are unsupported by the testimony and evidence." We have carefully *404 considered these contentions and all of the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). Although we agree that defendant's arrest for operating a motor vehicle while under the influence of intoxicating liquor was invalid and unlawful, this did not bar his prosecution for the substantive offense. It is clear that at 10:00 p.m. when defendant was arrested the officers lacked the requisite knowledge to properly arrest defendant for a violation of N.J.S.A. 39:4-50(a). As defendant correctly contends he had not operated his motor vehicle in their presence. Our statutes governing traffic regulations require that violations thereof occur in the "presence" of the arresting officer to justify an arrest without a warrant. See N.J.S.A. 39:5-25; State v. Smith, 37 N.J. 481, 495 (1962), cert. den., 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963). See also State v. Daly, 64 N.J. 122, 125 (1973). It is equally clear that the proper or better procedure under these circumstances would have been for the municipal court judge to direct the issuance of a new summons based upon all the information available to the State, including the knowledge of Dunay's observations. See R. 3:3-4(b) and R. 7:3-1.[3]
The law, however, is settled: "an illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." United States v. Crews, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 *405 (1980); Gerstein v. Pugh, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952). Or as our Supreme Court has stated, "the legality of the arrest as such has no bearing upon the validity of the conviction." State v. Smith, 43 N.J. 67, 74 (1964), cert. den., 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965), reh'g den., 380 U.S. 938, 85 S.Ct. 945, 13 L.Ed.2d 826 (1965). The requirements of due process are "satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." Frisbie v. Collins, supra, 342 U.S. 519 at 522, 72 S.Ct. 509, 511, 96 L.Ed. 541; Goodlet v. Goodman, 34 N.J. 358, 362 (1961), cert. den., 368 U.S. 855, 82 S.Ct. 92, 7 L.Ed.2d 52 (1961).
Here, there cannot be any doubt that defendant had been fairly apprised that he was charged with driving while under the influence and that that charge included his driving the motor vehicle to the place where he parked it on the sidewalk and was subsequently arrested. Defendant received Dunay's written statement through pretrial discovery and was well aware prior to the municipal court trial of the essence of Dunay's possible testimony, to wit, that he [defendant] was operating his motor vehicle in an erratic manner on the evening of October 7, 1983, shortly prior to 10:00 p.m. when he was arrested. Moreover, defendant's untimely motion to suppress Dunay's testimony as the fruit of the unlawful arrest belies any argument now by defendant that he did not know he was being charged and tried for "operating" his motor vehicle while under the influence of intoxicating liquor on the evening of October 7, 1983.
Consequently, defendant's contention that his conviction under N.J.S.A. 39:4-50(a) must be reversed as his arrest for the same was invalid "is obviously without merit. The legality of his arrest, as such, has no bearing herein upon the validity of *406 his conviction." State v. Sabo, 86 N.J. Super. 508, 514 (App. Div. 1965).
Furthermore, defendant's contention that the finding that he was guilty of driving while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50(a) was against the weight of the evidence is also without merit. Careful study of the record below convinces us that there was sufficient credible evidence to support the conviction. State v. Johnson, 42 N.J. 146, 161-162 (1964); State v. Conners, 129 N.J. Super. 476, 481 (App.Div. 1974). Dunay's testimony concerning defendant's operation of the motor vehicle at approximately 7:30 p.m. and again at approximately 9:30 p.m. and defendant's "staggering" across the street, when considered in the light of the stipulation made by defendant, including the admission that he was intoxicated when arrested at 10 p.m., compels the conclusion that defendant had in fact operated his motor vehicle while under the influence of intoxicating liquor on the evening of October 7, 1983. The inference is inescapable that defendant, while under the influence of intoxicating liquor, drove his motor vehicle to, and parked it on, the sidewalk near Bondy's Tavern where he was subsequently arrested. Cf. State v. Chapman, 43 N.J. 300, 301 (1964); State v. Dickens, 130 N.J. Super. 73, 78 (App.Div. 1974); State v. Baumgartner, 21 N.J. Super. 348, 349-351 (App.Div. 1952).

II.
Defendant also contends that his conviction for refusing to submit to an alcohol breath test in violation of N.J.S.A. 39:4-50.4a should be reversed because his arrest for operating a motor vehicle while under the influence of intoxicating liquor was invalid and therefore the "subsequent request for him to submit to testing was without the statutorily required basis." We agree and reverse this conviction.
N.J.S.A. 39:4-50.4a, in effect at the time of defendant's arrest, provides:

*407 The municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test provided for in section 2 of P.L. 1966, c. 142 (C. 39:4-50.2) when requested to do so, for 6 months unless the refusal was in connection with a subsequent offense under this section, in which case the revocation period shall be for 2 years.
The municipal court shall determine by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State while under the influence of intoxicating liquor or a narcotic, hallucinogenic, or habit-producing drug or marihuana, whether the person was placed under arrest, and whether he refused to submit to the test upon request of the officer, and if these elements of the violation are not established, no conviction shall issue. In addition to any other requirements provided by law, a person whose operator's license is revoked for refusing to submit to a chemical test shall satisfy the requirements of a program of alcohol education or rehabilitation pursuant to the provisions of R.S. 39:4-50. The revocation shall be independent of any revocation imposed by virtue of a conviction under the provisions of R.S. 39:4-50.
In addition to issuing a revocation, the municipal court shall fine a person convicted under this section, a fine of not less than $250.00 nor more than $500.00.
One of the critical elements of the offense proscribed by this statute is that defendant was arrested for a violation of N.J.S.A. 39:4-50. Implicit in the clear and unambiguous mandate that the municipal court "shall determine.... whether the person was placed under arrest" is the requirement that the arrest be valid and lawful. Anything less would violate fundamental principles of due process and procedural fairness. We cannot conceive that our Legislature in requiring the municipal court to make the specific determination that there be an "arrest" intended that the arrest be anything but a valid and lawful arrest. This conclusion is supported by other courts which have held that a valid and lawful arrest is a condition precedent to the right of a police officer to request a driver to submit to testing for alcohol or other proscribed substances or suffer the penalty for such refusal. See Gallagher v. Michigan Sec. of State, 59 Mich. App. 269, 229 N.W.2d 410, 413-414 (Ct.App. 1975); Holland v. Parker, 354 F. Supp. 196, 199 (D.S.D. 1973); Smestad v. Ellingson, 191 N.W.2d 799, 801 (N.D.Sup. *408 Ct. 1971); Colling v. Hjelle, 125 N.W.2d 453, 456-457 (N.D.Sup. Ct. 1964); Schutt v. MacDuff, 205 Misc. 43, 127 N.Y.S.2d 116, 127 (Sup.Ct. 1954). Cf. State v. Wetherell, 82 Wash.2d 865, 514 P.2d 1069, 1073 (Sup.Ct. 1973). But see Glass v. Commonwealth, Dept. of Transp., Bur. of T.S., 460 Pa. 362, 333 A.2d 768, 770-771 (1975).
In Gallagher v. Michigan Sec. of State, supra, for example, the Michigan Court of Appeals held that a valid arrest was an absolute condition precedent under a Michigan "implied consent" statute to the right of a law enforcement officer to request a person to submit to chemical tests of his blood, breath, urine or other bodily substances or suffer the penalty for such refusal, stating:
We are acutely aware of what is at stake in this question of statutory construction. We have not the slightest inclination to dilute in the most minute degree the public purpose of apprehending and convicting intoxicated or impaired drivers. No less are we inclined to give a statute an unconstitutional interpretation and render nugatory all the good that was the legislative purpose in passing the act.
We cannot conceive that the Legislature had the remotest intention by its wording of subsection 2, to mean that law enforcement officers can on what they alone consider "reasonable grounds" without any judicial restraint, supervision, or requirement of prior valid arrest, request a citizen to take a chemical test of bodily substances or suffer the grave penalty of license loss or suspension on refusal to comply.
Hence we hold that the sine qua non to energize the statutory mandate of the "implied consent" law is a prior valid arrest.
Since the arrest in this case was invalid so was the request to submit to the test or suffer the consequences of refusal. To this extent and to this extent alone do we uphold the injunction against further proceedings emanating from the alleged drunken driving by appellee. [229 N.W.2d at 413-414].
Similarly, in Holland v. Parker, supra, the United States District Court, in declaring the South Dakota implied consent law unconstitutional for failure to require a lawful arrest prior to a request for submission to blood alcohol analysis, commented in part:
The language of the South Dakota statute provides for neither an emergency circumstance nor a lawful arrest, nor has it been interpreted to contain such.

*409 Thus it would seem that if a police officer, implementing search and seizure procedures in accordance with constitutional proscriptions, cannot require a person to take a blood test without a warrant unless there is a lawful arrest and emergency circumstances, then neither could the officer demand that a licensee submit to the blood test, without these same constitutional prerequisites, when refusal would result in automatic loss of his license. If it were any other way, the Fourth Amendment protections would be rendered valueless since asserting them would result in a penalty potentially more severe than conviction for the alleged public offense. [354 F. Supp. at 199].
Consequently, since we have held that defendant's arrest for operating a motor vehicle while under the influence of intoxicating liquor was invalid, his conviction for refusing to submit to an alcohol breath test cannot be sustained.[4] Accordingly, defendant's conviction for violation of N.J.S.A. 39:4-50.4a is reversed and the penalties imposed thereon vacated.

III.
By way of summary, defendant's conviction for operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50(a) and the penalties imposed thereon are affirmed. Defendant's conviction for refusing to submit to an alcohol breath test in violation of N.J.S.A. 39:4-50.4a is reversed and the penalties imposed thereon vacated. The matter is remanded to the trial court for the entry of an amendatory judgment consistent with this mandate. We do not retain jurisdiction.
NOTES
[1] Although the municipal court judge erroneously referred to N.J.S.A. 39:4-50.4 the Law Division judge correctly referred to N.J.S.A. 39:4-50.4a, the former statute having been repealed effective January 12, 1982 (L. 1981, c. 512, § 3).
[2] Defendant conceded at trial that he was intoxicated at the time of his arrest. This admission is contained in the following stipulation placed on the record in the municipal court:

THE COURT: Well, the point is that I would like a very clear statement of the stipulation so that we know what is being stipulated to. Not a general statement that has to be interpreted at a later date. If you'll just hold for one moment. I want to check something. O.K. We'll take two minutes out for this  for counsel to discuss as to the stipulation.
THE COURT: Are we back on the record now? Have you gentlemen entered into a stipulation in this matter?
PROSECUTOR: Yes, Your Honor. I have written it down for purpose of Mr. Melli and I to be able to see that it was as complete as we wanted it to be. And the stipulation is this as I understand it.
PROSECUTOR: That all elements necessary to establish a prima facie case by the State are conceded and stipulated to by the defendant other than operation. The defendant will waive the necessity of the State proving other than operation to the extent that the State must prove items such as identity, condition and alcoholic influence. Also, it is waived or it is conceded for the same purpose as to the proof of the prima facie case that  to the extent the influence is required in order to base probable cause. In other ...
THE COURT: I don't understand that.
PROSECUTOR: Well, there is ...
THE COURT: No, read that again.
PROSECUTOR: It is also waived to the extent that the State requires to prove a prima facie case, the fact that influence is required in order to base a probable cause for a breathalyzer test. That is also deemed admitted under the circumstances in this case.
THE COURT: Influence?
PROSECUTOR: Alcoholic influence.
MR. MELLI: Judge, so it be made clear. When you've had the testimony of the youngster, Dunay, right?, the Court is going to have to decide whether or not Mr. Dunay, at the point of his observation, has proven driving while under the influence. That is not stipulated to. That's why that testimony went in subject to my objection with regard to the discovery element.
THE COURT: No, what I'm ...
MR. MELLI: I'll get to it, Judge.
THE COURT: O.K.
MR. MELLI: That question remains open to the Court to the extent that any testimony is necessary by Patrolman Macchio, Patrolman McLaughlin, Patrolman  Sergeant Valentich, or anyone else from the time of their observations forward, from the time they came on the scene, we stipulate, that is, the defense will not contest ...
THE COURT: That's what  that's the word I was looking for.
MR. MELLI: will not contest any other issue than operation.
[3] R. 3:3-4(b) provides:

(b) Issuance of New Warrant or Summons. If prior to or during the hearing as to probable cause, it appears that the warrant executed or summons issued does not properly name or describe the defendant, or the offense with which he is charged, or that although not guilty of the offense specified in the warrant or summons there is reasonable ground to believe that he is guilty of some other offense, the court shall not discharge or dismiss the defendant but shall forthwith cause a new complaint to be filed and thereupon issue a new warrant or summons.
R. 7:3-1 provides, inter alia, that the above rule is "applicable to municipal courts in respect to all non-indictable offenses" except in certain instances not applicable here.
[4] We do not suggest that a police officer who has probable cause to believe that an individual is under the influence of intoxicating liquor or a proscribed drug may not restrain that individual from driving a motor vehicle or request that individual to submit to an alcohol breath test. To the contrary, a police officer in recognition of the State's vital interest in promoting safety and in preventing crime has an affirmative duty to stop such individual from driving. Our decision today does not undercut that duty. Rather, we simply hold that an individual's license may not be revoked under N.J.S.A. 39:4-50.4a for refusing to submit to an alcohol breath test unless the request by the police officer has been preceded by a valid and lawful arrest for the violation of N.J.S.A. 39:4-50.