STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. EUGENE F. MULCAHY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Argued November 3, 1986—Decided June 30, 1987.

468

*Edward G. Sponzilli* argued the cause for appellant and cross-respondent (*Melli & Doyne*, attorneys; *Cummins, Dunn & Pashman*, of counsel; *Edward G. Sponzilli, Charles R. Melli, Jr.*, and *Warren S. Robins*, on the briefs).

*Joseph H. Cerame*, Acting Assistant Prosecutor, argued the cause for respondent and cross-appellant (*Larry McClure*, Bergen County Prosecutor, attorney).

*Larry R. Etzweiler,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*W. Cary Edwards,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, J.

 This case concerns the point at which an actor's conduct ripens into the operation of a motor vehicle sufficient to require submission to a breathalyzer test for suspected intoxication. The circumstances here will rarely, if ever, be repeated. The question put to the municipal court, in a hypothetical form, was whether police officers, who see someone who is drunk stagger out of a tavern into a car that is illegally parked on a sidewalk, have to wait until the driver turns the ignition key before making the arrest that under *N.J.S.A.* 39:4–50.4a is predicate to requiring the driver to submit to the breathalyzer test. We think not and therefore reinstate the judgment of conviction for refusal to submit to the breath test.

The hypothetical posture of this case arises from an apparent desire on the part of the defendant not to have the details of his insobriety elaborated in the minutes of the local municipal court proceedings. Posing the question as a hypothetical was apparently intended to avoid any exaggerated description of the symptoms of insobriety. With a stipulation that we shall detail later, the defendant made a tactical choice at trial to base his defense entirely upon two propositions of law: (1) no matter how obvious the evidence of insobriety, the police could not arrest for the motor vehicle violation until the engine had been started, and (2) any proceedings that followed such an illegal arrest, including the gathering of statements from witnesses, would be tainted by the illegality of the arrest and would preclude prosecution for drunken driving.

I.

Some unfairness to the defendant will ensue if the reader does not keep in mind that the following chronology of events is

based upon the hypothetical posture of the case that we previously noted. Just as in a motion for summary judgment by a defendant, we must here consider the facts in a light most favorable to the State.

Assuming the facts most favorable to the State, at about 9:45 p.m. on October 7, 1983, two police officers saw an inebriated patron stagger out of Bondy's Tavern in Cresskill, toward a car that was illegally parked on the sidewalk in front of the tavern. One officer approached the car. As the man who was then seated in the car started to put the keys in the ignition, the officer reached in through an open window and took the keys out of the driver's hands. The officer placed the driver under arrest, and told him that he would have to submit to the breathalyzer test required under *N.J.S.A.* 39:4–50.4a.

Approximately ten minutes after the arrest, the officer learned that a fifteen-year-old youth had seen the suspect operating the car before the suspect entered the tavern. The young man went to the police headquarters with his father, and at about 10:45 p.m. the youth gave a statement to the police. As a result of the information contained in that statement and both officers' observations, the arresting officer made out two summonses, charging the defendant with operating a motor vehicle while under the influence in violation of *N.J.S.A.* 39:4–50(a) and with failure to submit to a breathalyzer test as required by *N.J.S.A.* 39:4–50.4a.

At the municipal court trial, the young man took the stand first. His in-court statement was somewhat more detailed than his original statement. He said that he had first seen the defendant at about 7:30 p.m. when he was in the vicinity of Bondy's Tavern. He said that he was standing between Bondy's and Jolly Nick's, another local establishment. From there, he saw the defendant attempt to pull his car into the driveway by Bondy's, miss the driveway, go up on the curb, and scrape his license plate on the curb. When asked if he observed anything else unusual about the operation of the car at that

time, the youth said "only except when he pulled out * * * he pulled off the license plate half way and it was hanging on by one screw."

The young man testified that he next saw defendant in front of Jolly Nick's at about 9:30 p.m. He testified that from a vantage point in the park across the street from Jolly Nick's, he saw defendant pull up on the sidewalk in front of the tavern.[1]

The State next called the arresting officer. He testified that he had had five years experience on the force, and special training in the recognition of intoxication. At that point the defense objected to further questioning on the subject of intoxication and addressed the court with respect to a stipulation that it had made with the municipal prosecutor. Defense counsel indicated to the court that for purposes of the hearing, the defendant would contest only the issue of operation. He would waive any defense to all other elements necessary to the State's case. The court inquired:

> Now are we stipulating that, assuming the legal arguments are not successful, after the arrest that all elements relevant to driving under the influence and refusal of the breath test will not have to be proved, will be stipulated to? Is that what we're doing?

Counsel agreed that except for the issue of operation in the presence of the police officer, all issues were waived, and that on the arrest question his only argument went to presence.[2]

Understandably concerned, the municipal judge suggested a recess so that the parties could make a very clear statement of the stipulation so that he would know exactly what was being stipulated. The prosecutor and defense attorney then agreed

---

[1]There is some concern over whether the youth's testimony was consistent with his statement that had been furnished to the police in the course of discovery. The parties elicited that at some point the defendant had asked the witness for directions to the George Washington Bridge, and various inconsistencies between his statement and his testimony were pointed out. The witness' statement was admitted into evidence subject to redaction.

[2]Under *N.J.S.A.* 39:5–25 a police officer may make an arrest for a motor vehicle violation pursuant to any act that is committed in his presence.

on the language of a written stipulation, which was expressed to the court in the following terms:

[A]ll elements necessary to establish a prima facie case by the State are conceded and stipulated to by the defendant other than operation. The defendant will waive the necessity of the State proving other than operation to the extent that the State must prove items such as identity, condition and alcoholic influence.

In addition, the stipulation conceded the presence of probable cause to require that defendant take the breath test if he were found to be operating in the officer's presence.

Counsel for the defendant made it clear to the court that he was basing his entire defense on that line of cases that deals with the movement and operation of motor vehicles in such circumstances, referring specifically to *State v. Sweeney*, 40 *N.J.* 359 (1963), and *State v. Daly*, 64 *N.J.* 122 (1973). In the event that he won on the unlawful arrest issue, counsel preserved the right to request the court to dismiss the entire case.

Still concerned, the municipal court said:

The point that I want to clarify on the record—that assuming, depending upon my decision and depending upon your decision this appeal is necessary, that this matter will not then come back to the Court concerning whether or not there was influence—alcoholic influence under this—

COUNSEL: It will not.

THE COURT: Okay. That's clear. Thank you very much.

With that stipulation of facts, the trial court then focused entirely on the aspects of the defendant's conduct that dealt with his attempt to operate the car. As the police officer described it, he saw the defendant approach his car, get into the car, seat himself behind the wheel, take out his keys, and start to put the keys in the ignition. As noted, at that point the officer reached in the car window and took the keys out of defendant's hand. The engine was off. It had not been started. The vehicle was still parked on the sidewalk in front of Jolly Nick's. The officer was quite direct in stating that he had no knowledge of any operation of the car by the defendant prior to the time that he made the arrest. He did not learn about the young witness until after the arrest and thus had no independent basis for determining that the defendant had oper-

ated the vehicle at any time prior to the moment when he started to turn the key in the ignition.

So the question comes down to this: is an attempt by a drunk person to place the keys in the ignition and start the car, operation within the meaning of *N.J.S.A.* 39:4–50.4a sufficient to warrant the operator's submission to a breathalyzer test. The municipal court did not decide the question directly. It defined the issue as one of probable cause, asking whether the arresting officer had reasonable grounds to believe the defendant had violated the statute. The court held that the car parked on the sidewalk and observed by the officer raised the inference of defendant's prior operation of the vehicle while intoxicated and established probable cause. Further, the court noted that the circumstances observed by the officer showed that defendant intended to resume operation while intoxicated, compelling the officer to seize defendant's keys in the interest of public safety. The municipal court convicted the defendant of both counts in accordance with the stipulation.

On the appeal *de novo,* the Law Division affirmed the municipal court. It read *N.J.S.A.* 39:4–50 to require "that at least the motor * * * be running, so that the car can be put into gear and moved." It therefore concluded that the defendant did not operate the vehicle in the presence of the officer within the meaning of *N.J.S.A.* 39:4–50. Instead, the Law Division relied on the officer's duty to protect the public safety as the grounds for the arrest.

The Appellate Division, however, disagreed that defendant's arrest was valid and it reversed the defendant's conviction for refusing to submit to a breathalyzer test. 202 *N.J.Super.* 398, 409 (1985). The court held that because the defendant did not operate the vehicle in the presence of the officer, the officer lacked the requisite knowledge to make a legal arrest of the defendant at the time the arrest was made. In the court's view, in the absence of a valid arrest, the officer lacked the statutory basis to request that defendant submit to testing.

Nonetheless, it upheld the conviction for drunk driving under *N.J.S.A.* 39:4–50 on the theory that an invalid arrest is neither a bar to subsequent prosecution nor a defense to a valid conviction where due process requirements were satisfied. The court concluded here that defendant was fairly apprised of the charges against him and that the trial was conducted in accordance with required constitutional safeguards. 202 *N.J.Super.* at 404–406.

We granted the petitions for certification of both the State and the defendant. 103 *N.J.* 498 (1986).

## II.

On appeal to this court the defendant reiterates his argument that at the time of the original arrest at 10:00 p.m. the officer did not have probable cause to believe that defendant had been operating a motor vehicle while under the influence of intoxicating liquor in the officer's presence. As noted, the officer did not know of defendant's prior operation of the vehicle at 7:30 or 9:30 when he made the arrest at 10:00 p.m. Nor had the officer any basis to believe that the driver was drunk before he went into the tavern after he left the car on the sidewalk.

Under *N.J.S.A.* 39:4–50.2(a), every motorist using the public roads in the State is deemed to have given consent to undergo a chemical test to determine blood alcohol (breathalyzer test) "at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle [while under the influence of alcohol] in violation of [*N.J.S.A.*] 39:4–50."

The penalty for refusing the test under *N.J.S.A.* 39:4–50.4a, for a first-time offender is a six-month revocation of driving privileges, a minimum fine of $250, and a minimum of twelve hours in an Intoxicated Driver Resource Center pursuant to *N.J.S.A.* 39:4–50(a)(1).

In 1981 as part of a comprehensive revision of the drunk driving laws, the penalty statute providing for administrative

handling of refusal cases was repealed. *N.J.S.A.* 39:4–50.4 repealed by *L.* 1981, *c.* 512 § 3. Jurisdiction over these cases was transferred from the Office of Administrative Law and the Division of Motor Vehicles to the municipal courts. *N.J.S.A.* 39:4–50.4a. The penalty statute, *N.J.S.A.* 39:4–50.4a, now requires that:

> The municipal court shall determine by a preponderance of the evidence whether
>
> (1) the arresting officer had probable cause to believe[,]
>
> (a) that the person had been driving or was in actual physical control of a motor vehicle on the public highways or quasi-public areas of this State[,]
>
> (b) while under the influence of intoxicating liquor or a narcotic, hallucinogenic, or habit-producing drug or marihuana,
>
> (2) whether the person was placed under arrest, and
>
> (3) whether he refused to submit to the test upon request of the officer[.] * * *
>
> [I]f these elements of the violation are not established, no conviction shall issue. [Numeration added]

By virtue of the stipulation, findings on all issues "other than operation" were waived. Obviously, defendant was at least in "actual physical control" of the vehicle, as the words appear in the penalty section, but we agree that his liability should be premised on the question whether he was operating the vehicle. (We note, however, that the Motor Vehicle and Traffic Law defines "operator" as "a person who is in actual physical control of a vehicle or street car." *N.J.S.A.* 39:1–1.)

In addition, we shall agree for purposes of this appeal that the officer's authority to arrest may be analyzed in the context of *N.J.S.A.* 39:5–25, which authorizes any police officer to arrest, without a warrant, any person violating in his presence any provision of chapters 3 and 4 of the Motor Vehicle and Traffic Laws.[3] However, we further note that under *N.J.S.A.*

---

[3]The Law Division observed that under *N.J.S.A.* 26:2B–16, pursuant to his duty to protect the public safety, an officer may apprehend any person who is intoxicated in a public place and who the officer has reason to believe is incapacitated and may request that person to submit to "any reasonable test, including * * * tests of his * * * breath." *N.J.S.A.* 26:2B–16. However, we

39:3–29, subject to the requirements of *Delaware v. Prouse*, 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.*2d 660 (1979), police may stop vehicles to require the production of driving credentials. *See State v. Astalos*, 160 *N.J.Super.* 407 (Law Div.1978) (police officers entitled to stop speeding vehicle without warrant under either *N.J.S.A.* 39:3–29 or *N.J.S.A.* 39:5–25, the express statutory authority to apprehend Motor Vehicle Code transgressors); *see also, State in the Interest of J.B., Jr.*, 131 *N.J.Super.* 6 (Cty.Ct.1974) (further authority for warrantless arrest in motor vehicle context found in *Rule* 3:4–1, made applicable to motor vehicle offenses by *Rule* 7:3–1, which establishes procedures to be followed in making a warrantless arrest).

Operation in the officer's presence has never meant that the officer must see a vehicle in motion. The word "presence" in the statute "sums up the requirement that the officer know of the event by the use of his senses." *State v. Dickens*, 130 *N.J.Super.* 73, 76 (App.Div.1974) (citation omitted) (officer may arrest intoxicated motorist at rest in a vehicle by the highway when evidence demonstrates that his operation got the vehicle there). Resolution of the question of operation requires a review of the series of decisions that counsel for the defendant presented to the municipal court. For background we refer to the thorough analysis of those cases made in *State v. Stiene*, 203 *N.J.Super.* 275 (App.Div.1985).

In that case, the court was presented with the aftermath of a young man's attempt to sell an old car. As the court stated the facts, when a prospective purchaser took the car out for a test drive, it ran out of gas close to defendant's home. Defendant was intoxicated at the time but he nonetheless attempted to move the car by having his mother push the car back to the house with her car.

Due to the old car's peculiarities, without the key the shift lever could be put between park and reverse, and when placed

---

note that apprehension under this statute, found in a chapter entitled "Rehabilitation of Alcoholics," is not considered arrest.

between these positions the car could be rolled. When defendant's mother attempted to push the car, however, her vehicle sustained damage due to the inability of the defendant's car to move since the gearshift lever had snapped back to park. A police officer coming upon the accident scene concluded that the defendant was behind the wheel and had attempted to control the car's motion.

The sole legal issue in the case was whether defendant's activities constituted operation of the vehicle in violation of *N.J.S.A.* 39:4–50(a). The court wrote:

> There are but few New Jersey cases that have considered the issue of "operation." *See State v. Daly,* 64 *N.J.* 122 (1973); *State v. Sweeney,* 40 *N.J.* 359 (1963); *State v. Jeannette,* 172 *N.J.Super.* 587 (Law Div.1980); *State v. Prociuk,* 145 *N.J.Super.* 570 (Cty.Ct.1976). *State v. Sweeney* established the principle that when one in a public place "turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle," he "operates" the motor vehicle within the meaning of *N.J.S.A.* 39:4–50. Although the "intent" test was criticized in the dissenting opinion of Justice Francis in *Sweeney* and in the concurring opinion of Justice Clifford (with whom Justice Pashman joined), in *State v. Daly,* "intent" is the principal consideration to determine operation. In fact, in *State v. Daly,* where the driver sat behind the wheel with the engine running for a considerable length of time, using the engine only to power the heater in the car but with no intent to move the vehicle, the court found no violation of the statute. \* \* \* \* *State v. Jeannette* involved the "operation" of a motorcycle by the defendant's coasting a short distance on the vehicle in neutral, without activating the motor. Defendant's girlfriend had taken the key from him so that he could not operate the vehicle in his intoxicated condition. The court nevertheless determined that the public was to be protected from the moving vehicle irrespective of whether it was powered by its engine or by gravity. This case is cited to us for the proposition that the vehicle must *move* in order that defendant be found guilty of violating the statute. We do not so read *Jeannette.*
>
> Following *Sweeney* and *Daly* we determined that we must focus upon defendant's intent. In *Daly,* if defendant had been found in the stationary vehicle with the intent to move it, there is no doubt from our reading of the opinion that a conviction would have been warranted. Therefore, the motion of the vehicle is not a limiting factor. We also agree with the decision in *Jeannette* that the engaging of the engine in a moving vehicle is not required for a conviction.
>
> Synthesizing these cases, it appears that when one in an intoxicated state places himself behind the wheel of a motor vehicle and not only intends to operate it in a public place, but actually attempts to do so (even though the

attempt is unsuccessful) and there is the *possibility* of motion, he violates the statute. The Legislature through this statute and others has demonstrated its antipathy to the operation of motor vehicles by those under the influence of alcohol, drugs or other intoxicants. Only chance * * * prevented this automobile from being placed in motion by a person with a blood alcohol reading well in excess of that necessary to declare him unfit to operate the vehicle. Here we have not only an intent to operate but a concerted attempt to move the vehicle. There is really little difference between the defendant here and the defendant in *Sweeney.* * * * We, therefore, find defendant's actions constituted operation within the meaning of the statute. [203 *N.J.Super.* at 278–279 (emphasis added) (footnote omitted).]

There is really very little difference between the defendant here and the defendant in *Stiene.* Only the chance occurrence of the police officer upon the scene prevented this vehicle from being placed in motion by a person with a blood alcohol reading well in excess of that necessary to declare him unfit to operate the vehicle. This much is admitted by defendant.

The contrary argument overlooks the well-recognized distinction between the concept of "operating" a motor vehicle for the purposes of defining a moving violation and "operating" for purposes of defining the essence of the under-the-influence offense. "The essence of the [latter] offense is the impaired condition of defendant's physical coordination or mental faculties rather than the manner in which he is driving." *State v. Roenicke,* 174 *N.J.Super.* 513, 517 (Law Div.1980).

This analysis is consistent with precedent elsewhere. It is clearly established that the term "operating," as used in statutes prohibiting the operation of a motor vehicle while intoxicated generally has been construed as broader than the term "driving."

The term "operate," it has been held, includes merely controlling the vehicle and is intended to forbid persons from doing anything with regard to the mechanism of a motor vehicle, whether it has any effect on the engine or not. Similarly, it has been held that a person begins to operate the instant he begins to manipulate the machinery of the vehicle for the purpose of putting the car in motion, and that "operates" refers to the actual physical handling of the controls of a vehicle.

[Annotation, "What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance," 93 *A.L.R.*3d 7, 16–17 (1979) (footnotes omitted).][4]

As we noted at the outset, this case requires line-drawing on a very difficult set of facts. If defendant had turned the key in the ignition, an intent to drive would have made him an operator. Does it make sense to say that he is not operating when the circumstances are so nearly identical?

■ "[W]e are dealing with law enforcement efforts designed to curb one of the chief instrumentalities of human catastrophe, the drunk driver." *State v. Grant*, 196 *N.J.Super.* 470, 476 (App.Div.1984). The New Jersey Legislature had in mind the prevention of accidents when it enacted its drunk-driving legislation. We believe that it would want to include within its regulatory program drivers like defendant. We therefore believe that when one enters a car and puts one's self in the driver's seat, that person is in control of the car and an intention to drive the vehicle, combined with physical movements to put the car in motion, constitutes operation, at least sufficient to warrant an arrest for purposes of submission to the sobriety test required by *N.J.S.A.* 39:4–50.4a.

In *State v. Wright*, 107 *N.J.* 488 (1987), also decided today, the Court holds that probable cause to believe a person *has* been operating a vehicle is sufficient to require that person's

---

[4]There are always applications of a general rule that strain its outer limits. When does operation take place? In *State v. Roberts*, 139 *Me.* 273, 29 *A.*2d 457 (1942), the intoxicated motorist who was operating the engine of a vehicle being towed up an icy incline was found to be operating the motor vehicle even though his front wheels were extended in the air by a tractor. In *Commonwealth v. Clarke*, 254 *Mass.* 566, 150 *N.E.* 829 (1926), a motorist who manipulated a gear lever of a car standing on a downgrade so that it moved slightly through the operation of the law of gravity was found to have operated the car. In *Commonwealth v. Uski*, 263 *Mass.* 22, 24, 160 *N.E.* 305, 306 (1928), the court held that a motorist who intentionally made use of "any mechanical or electrical agency which alone or in sequence would set the motor power in action," was "operating" the car. These are hard lines to draw, and like the lines drawn in *State v. Stiene*, 203 *N.J.Super.* 275 (App.Div.1985), and *State v. Jeannette*, 172 *N.J.Super.* 587 (Law Div.1980), do not evoke uniform response.

submission to a breathalyzer test. As we noted earlier, in this case the municipal court appeared to premise its result on such a suspicion. The municipal court reasoned as follows: the car was on the sidewalk and the defendant must have driven it there; since the defendant was plainly drunk, the defendant must have driven the car onto the sidewalk while drunk. Hence, it found probable cause to arrest existed. But the officers had no evidence at the time of the arrest as to *when* the car got there, and there was thus no reasonable basis for the conclusion that the defendant drove the car onto the sidewalk while intoxicated. Therefore, the issue in this case must be resolved in the context of what the officers saw when the defendant exited the tavern, not what they suspected. What did that observed conduct connote; did it connote operation?

The respected Judge Price, in *State v. Sweeney*, 77 *N.J.Super.* 512, 520 (App.Div.1962) *aff'd*, 40 *N.J.* 359 (1963), stated that attributing a broader construction to the word *operate*, in the context of drunk driving, "represent[s] the more reasonable approach." Acts of physical control of a car's machinery (there turning the ignition switch) "justif[y] the inference that [the driver] intended to take the next step in the operation of the car—to put the vehicle in motion." 77 *N.J.Super.* at 520–21 (citing Annotation, 47 *A.L.R.*2d 570 (1956)). We believe that the Legislature intended that law enforcement "should not have to wait until a potential danger is a real one, when they see actions such as these occur." *State v. Jeannette, supra,* 172 *N.J.Super.* at 592.

■ This case obviously represents the outer limits of accepted police practice. The encounter was coincidental and the officer was required to make a split-second choice with limited alternatives. We share the concern of the dissent about possible misapplication of the principle, and we therefore hasten to add that in order for an officer to require a driver to submit to a breathalyzer test, the officer must have probable cause to believe that operation *has occurred* or presently *is occurring.*

This decision does not give license to require persons to submit to breath tests because of the probable relief that they will operate a motor vehicle at some time in the near future. Those circumstances are totally unrelated to these and we shall continue to trust the sound judgment of our municipal court judges in whom the grave responsibility for enforcing this legislative scheme has been reposed. We reemphasize that, in circumstances such as these, such a sobriety test may be required under the statute only of a person properly suspected of being under the influence who is in actual physical control of a vehicle and has started to place the car's machinery in operation, intending to drive it on a public way.

## III.

Because of the disposition that we make, we need not address the legal theory by which the Appellate Division sustained the defendant's conviction of drunken driving. That court, although believing that the defendant had not been shown to have operated the motor vehicle in the officer's presence and that the defendant was thus not subject to the legal arrest that is predicate for the breath test, nonetheless sustained the conviction for operating the motor vehicle while under the influence on the basis of the evidence presented by the juvenile witness and the admitted insobriety of the defendant.

It is a troublesome question indeed, whether the defendant was fairly apprised that a charge was made against him for operation before he entered the tavern considering that the summons specified the time of the offense as 10:00 p.m., which was approximately the time of the arrest as he left the tavern. In view of the confused procedural posture of the case and the tactics of trial counsel for the defendant, it is difficult for us to evaluate the merits of the argument on that issue now advanced by appellate counsel, who did not participate in the trial strategy. As it appears to us now, that trial strategy circumvented the necessity that any additional inferences be drawn by

the municipal court in order to sustain a conviction for drunk driving. We agree with the view of the Appellate Division that an illegal arrest taints only the evidence that is the product of the arrest; it does not necessarily taint an entire prosecution. *Cf. State v. Sugar,* 100 *N.J.* 214 (1985) (violation of right to counsel would preclude admission of any evidence that flowed from violation).

A court in the normal course of a drunk driving proceeding, not as constrained in its inquiry as this one, would inquire whether the witness' evidence would have been forthcoming in any event or whether it was the product of a tainted arrest. At that point the trial court could conform the charges to the evidence provided there was no surprise or prejudice to the defendant. *R.* 3:7–4; *see State v. Talley,* 94 *N.J.* 385 (1983) (defendant having been charged with robbery could not claim surprise or prejudice in having to defend against charge of theft by deception where statute put defendant on notice that any conduct denominated as theft was within four corners of robbery indictment). *But see State v. Roenicke, supra,* 174 *N.J.Super.* 513 (not proper to amend drunk driving charge to reckless driving because to do so would deprive defendant of the opportunity to prepare and defend against the new charges).

However, as noted here, the entire legal contest was over whether the defendant's conduct constituted operation sufficient to require submission to a breathalyzer test. That the municipal court articulated its judgment of conviction of drunk driving on the basis of the operation of the vehicle witnessed by the young man does not detract from the effect of the stipulation. We cannot recreate this trial in a way that the parties did not. At the Superior Court trial *de novo,* the defendant made it clear that he was not contesting the drunk driving conviction on any basis other than the validity of the arrest. His attorney emphasized that "[t]his case rises or falls on, Judge, whether or not Patrolman Macchio saw Mr. Mulcahy operate the vehicle."

We have resolved that issue against defendant. The remaining results flow from the stipulation below.

The judgment of the Appellate Division is reversed, insofar as it reverses defendant's conviction of violation of *N.J.S.A.* 39:4–50.4a (refusal), and affirmed insofar as it affirmed defendant's conviction of violation of *N.J.S.A.* 39:4–50 (drunk driving).

CLIFFORD, J., dissenting.

Defendant, Eugene F. Mulcahy, was convicted of operating a motor vehicle while under the influence of intoxicating liquor, in violation of *N.J.S.A.* 39:4–50(a), and of refusing to submit to a breathalyzer examination, as called for by *N.J.S.A.* 39:4–50.-4a. The Appellate Division affirmed the drunk driving conviction but reversed the "refusal" charge. *State v. Mulcahy,* 202 *N.J.Super.* 398 (1985). The Court upholds the driving-while-intoxicated charge, and, reversing the Appellate Division in part, reinstates the conviction for refusal to submit to the chemical test. I would hold both convictions invalid, and therefore dissent.

The Court treats the critical issues as having been presented in hypothetical form. *Ante* at 469. I do not read the record that way. The case was tried the way any other "real, live" case is tried, with the defense stipulating identification and intoxication at the time of arrest, leaving it to the State to prove operation. Nothing extraordinary about that. And nothing to suggest the fanciful hypothesis gratuitously adopted by the Court, *ante* at 470 that defendant "stagger[ed] out of Bondy's Tavern" and otherwise exhibited symptoms of insobriety.

Rather, the following evidence was adduced as related by the Appellate Division in support of its affirmance of Mulcahy's drunk-driving conviction:

According to the State's proofs at approximately 7:30 p.m. * * * Sean Dunay, a 15–year old boy, was standing near Bondy's Tavern when he saw defendant "driving down Piermont" Road in Cresskill toward Demarest. Dunay testified that as defendant attempted to pull into a driveway "right by Bondy's ... he

missed pulling into the driveway and came up on the curb and hit his license plate." Dunay testified that after hitting the curb defendant pulled away from the curb, pulling off his "license plate half way" so that "it was hanging on by one screw." Defendant proceeded down the street, "stopped for a while in the middle of Piermont and then just pulled away and drove away." Dunay further testified that at approximately 9:30 p.m. that same evening he saw defendant again. This time, according to Dunay, defendant "came from the direction of Tenafly," parked by Jolly Nick's, which is next to Bondy's Tavern, and after getting out of his car staggered across Piermont.

At approximately 9:45 p.m. Officers Macchio and McLaughlin of the Cresskill Police Department arrived at the area of Bondy's Tavern. Officer Macchio testified that defendant's car was parked on a sidewalk which was not a parking area. He observed defendant approach the car, enter the car, and take the car key in his right hand. As defendant "started to make his way towards the ignition," Officer Macchio "intercepted the keys from his hand." At that point Officer Macchio arrested defendant for driving under the influence of intoxicating liquor in violation of *N.J.S.A.* 39:4-50. As indicated both on the summons and in the testimony of Officer Macchio this arrest occurred at approximately 10:00 p.m.

[202 *N.J.Super.* 401-03 (footnote omitted).]

As I see the case, defendant was not "operating" his vehicle at the time he was charged with drunk driving, wherefore that charge must fall. And because the arresting officer could not, for the same reason, have had probable cause to believe that defendant had been driving while drunk, the conviction for refusal to submit to a breathalyzer test likewise cannot be sustained.

I

At the outset I acknowledge that I approach the issues on this appeal with a view that some might legitimately perceive as primitive. I still believe, as I did in *State v. Daly,* 64 *N.J.* 122 (1973), that a conviction for operating a motor vehicle while under the influence requires a demonstration that the vehicle was "in motion on the roadway." *Id.* at 126 (concurring opinion). I agreed then, as I do now, with Justice Francis's dissenting position in *State v. Sweeney,* 40 *N.J.* 359 (1963).

The source of Justice Francis's disagreement with the Court in *Sweeney* was the majority's holding that a person "drives" a stationary motor vehicle while under the influence of intoxicating liquor, within the meaning of the drunk-driving statute,

"when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle * * *." *Id.* at 361. Justice Francis, after meticulously picking over the legislative history, reached the conclusion that "[a] stationary vehicle is not being operated in the sense required for conviction; nor was the purpose of the act to make proof of an unexecuted intent to drive (operate) sufficient to convict of the offense specified therein." *Id.* at 367 (Francis, J., dissenting). Said he:

> We are dealing here with a *quasi*-criminal legislative enactment which visits serious consequences upon those who transgress it. The fact that all of us are aware of the hazards presented by drunken automobile drivers on the highways should not drive us from the normal view that penal statutes call for strict construction. Conduct should not be declared criminal unless it is plainly within the terms of the lawmakers' condemnation.
>
> In my judgment "operates" in the Motor Vehicle Act context is and was used as synonymous with "drives." The word connotes and requires movement of the car on the highway before violation occurs.
>
> * * * * * * * *
>
> I am convinced the lawmakers and other officially-interested persons regarded "operate" as interchangeable with "drive." There is no reasonable support in the legislative history for the view that an immobile automobile is being driven or operated by a person who [as was the case in *Sweeney* ] seats himself behind the steering wheel and *does no more than start the motor.*
>
> [*Id.* at 362–63 (Francis, J., dissenting) (emphasis added).]

The foregoing position, I concede, has not exactly swept through the body of case law on this subject like wildfire, having been adopted only by Justice Francis in *Sweeney* and Justice Pashman and me in *Daly.* It may be a trifle antediluvian, a quaint relic the proponents of which are to be indulged, maybe gently humored, but surely not followed; but the fact remains that no matter what tests for "operating" the lower courts may have concocted, this Court has invariably required as a bare minimum of "operation" of a stationary vehicle that its engine have been started. *See State v. Daly, supra,* 64 *N.J.* at 125.

So for me today's case is an *a fortiori* proposition: defendant had not even put the key in the ignition, much less started the car. And if we are going to start drawing new lines for operation—here, when defendant's hand, with the key enclosed, is on its way toward the ignition—what about when defendant puts his hand on the driver's door handle? Or when he approaches the car? Or when he departs from the saloon? Or when he gets off the bar stool? It reminds me of nothing so much as the chaos we created for ourselves in the bad old days of the worker's compensation "going and coming" rule, see, e.g., *Briggs v. American Biltrite*, 74 *N.J.* 185 (1977); *Paige v. City of Rahway, Water Dep't*, 74 *N.J.* 177 (1977); *Wyatt v. Metropolitan Maintenance Co.*, 74 *N.J.* 167 (1977); *Watson v. Nassau Inn*, 74 *N.J.* 155 (1977), from which the legislature has mercifully granted us deliverance. *See N.J.S.A.* 34:15-36; *Cressey v. Campus Chefs*, 204 *N.J.Super.* 337, 343 (App.Div. 1985).

Here the defendant was charged with an offense on October 7, 1983, at 10:00 p.m. (that is the *time* written on the summons) at "Piermont Rd., Cresskill" (again, the *place* written in by the officer in the appropriate box for "location"). This information is followed by the printed legend: "And did then [10 p.m.] and there [Piermont Rd., Cresskill] commit the following offense(s):," after which the Officer Macchio inserted "driving under the influence." *That* is the charge—not drunk driving between 7:30 and 9:45 p.m., for which the municipal court judge found defendant guilty, and apparently—but not clearly—as agreed to by the Superior Court on trial *de novo* on the record. As for the Appellate Division, it in effect simply amended the charge without acknowledging as much, because it concluded that defendant "had been fairly apprised that he was charged with driving while under the influence and that that charge included his driving the motor vehicle to the place where he parked it on the sidewalk and was subsequently arrested." 202 *N.J.Super.* at 405. And as for this Court, I think—but I am not certain—that what it is saying is that in fact defendant was

convicted of driving under the influence *before* he entered Bondy's, see *ante* at 481; that in fact the summons specified the time of offense as 10:00 p.m. after he left the tavern; and that in fact this little—umm—disharmony presents "a troublesome question indeed," *ante* at 481, but no matter, because "the entire legal contest was over whether the defendant's conduct constituted operation sufficient to require submission to a breathalyzer test." *Ante* at 482. It is difficult to be critical of that conclusion because I do not understand it.

What I do understand is that the arresting officer conceded that he arrested defendant and charged him with drunk driving at 10:00 p.m. based exclusively on his own observations at the scene—not on any other information from young Dunay or any other source. Because I am satisfied that defendant did not operate his vehicle at 10:00 p.m., and because defendant was not charged with driving under the influence at any earlier time, I would reverse the judgment of conviction for drunk driving.

## II

On the "refusal" charge, the elements that must be proven include, in addition to defendant's refusal to submit to the breathalyzer test, an arrest for drunk driving (surely that must mean a legal arrest, not simply a taking into custody), and, if we get over that one, a demonstration that "the arresting officer had probable cause to believe that the person had been driving * * * while under the influence * * *." *N.J.S.A.* 39:4–50.4a. Given my view of the "operation" issue and Officer Macchio's admissions, I would conclude that the arresting officer did not have probable cause to believe that defendant had been driving at ten o'clock while under the influence. See *State v. Wright*, 107 *N.J.* 488 (1987), also decided today. I would therefore affirm the Appellate Division's judgment reversing the defendant's conviction on the "refusal" offense.

## III

One final word by way of reassurance. This opinion should in no way be read as reflecting any insensitivity to the mayhem that can be visited on innocent people by drunks behind the wheel. I believe that I have demonstrated elsewhere my understanding of that problem and of the judiciary's proper role in addressing it. See, e.g., *State v. Milligan*, 104 *N.J.* 67, 68 (1986) (dissenting opinion). Nor should what I say today be taken as any criticism of the law-enforcement people involved— they would have been derelict had they not intercepted defendant, as his counsel is quick to admit—or of the young witness, Dunay, and his parents, who supported his courage and laudable purpose in coming forward to give information and in testifying. But the legislature has not yet created an offense akin to, say, an "attempt" to operate a motor vehicle while under the influence (although it has, of course, denominated as "criminal" a whole category of offenses generally falling under the heading of "criminal attempt," *see N.J.S.A.* 2C:5–1); and until it does so, I shall adhere to my position in this case and *Daly*.

*For affirmance in part and reversal in part*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For reversal in part and affirmance in part*—Justice CLIFFORD—1.