STATE OF NEW JERSEY, PLAINTIFF, v. ROBERT DIFRANCISCO, DEFENDANT.

Superior Court of New Jersey
Law Division Burlington County

Decided August 31, 1988.

318

---

*Joel A. Finkelstein* for defendant (*Robert A. Sand*, attorney).

*Thomas J. Cleary* for plaintiff (*Stephen G. Raymond*, Burlington County Prosecutor, attorney).

HAINES, A.J.S.C.

This opinion, written in response to an appeal from a municipal court conviction of driving while intoxicated (DWI), addresses two issues: (1) What is a "reasonable time" within which a breathalyzer test must be performed in accordance with *State v. Tischio*, 107 *N.J.* 504 (1987)? (2) Can a drunk driving conviction be sustained when defendant is apprehended behind the wheel of a nonoperable motor vehicle? Neither question has been considered in any prior judicial decision.

This court concludes that the State had the burden of proving by clear and convincing evidence that defendant-DiFrancisco's breathalyzer test was given within a reasonable time. That proof is a necessary foundation for the admission of the test results in evidence. The State presented no proof in that connection. Consequently, the breathalyzer test results may not be considered.

It is nevertheless clear from the field observations of the arresting officer that defendant, when found behind the wheel of his vehicle, was drunk. He must, therefore, be found guilty of DWI if he was operating his vehicle at that time. The record, however, shows that his vehicle was not then operable and it cannot be said that he was "driving" while intoxicated.

On October 28, 1987, at 3:10 a.m., a Mount Laurel Township police officer found DiFrancisco slumped over in the driver's seat of a Chevrolet pickup truck. Apparently, he had passed out. His foot was on the brake, the keys were in the ignition and the engine was warm. The front end of the truck was partially in a driveway, the bed of the truck in a ditch. The officer, who observed a strong odor of alcohol on DiFrancisco's breath, had difficulty waking him, finally getting him to leave the vehicle after three requests. DiFrancisco immediately started to fall down, was caught by the officer and had to lean against the pickup to avoid falling. His feet were spread wide apart for balance. He was arrested, charged with DWI and

given two breathalyzer tests at 3:54 a.m. and 4:01 a.m. The readings were .15% and .16% respectively.

The officer testified that when he passed the ditch in question on the night of the arrest, between midnight and 12:30 a.m., the pickup truck was not in sight. He did not return to that location until the time of the arrest. Presumably, therefore, DiFrancisco had been driving the pickup sometime between midnight and 3:10 a.m. The State provided no other information as to the time of driving.

DiFrancisco, citing *Tischio*, argued in the municipal court, and here, that the breathalyzer tests could not be considered because they had not been obtained within a reasonable time after the driving occurred. *Tischio* held:

> ... that the statute prescribes an offense that is demonstrated solely by a reliable breathalyzer test *administered within a reasonable period of time after the defendant is stopped for drunk driving*, which test results in the proscribed blood-alcohol level. [107 *N.J.* at 522; emphasis supplied]

The Court added emphasis to the reasonable time requirement in responding to a defense argument that the Court's construction of the statute would encourage police officers to hold an accused in prolonged detention in the hope that higher breathalyzer readings could be obtained. After noting the doubtful authority for such extended detention, it said: "Moreover, we now hold that breathalyzer tests must be taken 'within a reasonable time' after the arrest." *Id.* at 521.

In *Romano v. Kimmelman*, 96 *N.J.* 66 (1984), the Supreme Court found that breathalyzers were "scientifically reliable and accurate devices for determining the concentration of blood alcohol. Such scientific reliability shall be the subject of judicial notice in the trial of all cases under *N.J.S.A.* 39:4-50." *Id.* at 82. It continued, however, to say:

> In addition, we hold that the results of a breathalyzer test shall be generally admissible in evidence when the breathalyzer instrument is in proper working order, is administered by a qualified operator and is used in accordance with accepted procedures, and that such results may, upon the establishment of

these conditions, form the basis upon which a conviction of violating *N.J.S.A.* 39:4–50 may be obtained. [*Ibid.*]

Finally, *Romano* held:

The conditions of admissibility to which this burden of [clear and convincing] proof shall apply include those presently required to establish the admissibility of the results of a breathalyzer test, namely, the proper operating condition of the machine, the requisite qualifications of the operator, and the proper administration of the test.

. . . .

We hold further that the responsibility for establishing all conditions as to the admissibility of the breathalyzer results is properly allocated to the State. [*Id.* at 90–91]

One required proof as to "the proper administration of the test" is that it was performed "within a reasonable time after the defendant is stopped for drunk driving." The State must supply this proof by clear and convincing evidence. In this case the test was given as much as 3 hours and 50 minutes after the drunk driving occurred, unless DiFrancisco was "driving" at the time of his arrest at 3:10 a.m. In either case the State was obliged to prove that the test was given within a reasonable time. This court, absent such proof, has no way of knowing what time is reasonable, a conclusion that must depend upon a variety of facts, such as time and amount of alcohol consumption. The State presented no testimony on that issue and therefore failed to carry the burden of proof, making the breathalyzer test results inadmissible.

At the time DiFrancisco was arrested he was seated in a vehicle which could not be operated. The arresting officer was asked whether the vehicle "could have been driven out from the location it was in?" He replied: "No, it could not have been." He said he had it towed away. These statements were not contradicted.

Our cases hold that an intoxicated driver seated in a stationary but operable automobile may be convicted of DWI. Thus, in *State v. Sweeney*, 40 *N.J.* 359 (1963), the Court sustained the conviction of a person who, in an intoxicated condition,

> ... enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle.... [at 360–361]

In *State v. Daly*, 64 *N.J.* 122 (1973), the Court emphasized the State's burden to prove "intent" to drive. Daly was found seated in the driver's seat of an automobile parked in the parking lot of a tavern. He was intoxicated and asleep; the car lights were off but the motor was running. He told the arresting officer that he had no intention of driving and had started the car only to keep warm. He testified that he was "sleeping off" his intoxication. The Court held that the proofs did not show that he was "operating" his car:

> In the instant case, defendant denied any intent to move or drive his car until he had sobered up and, contrary to the State's contention, there was no evidence from which any such intent could be inferred beyond a reasonable doubt. [*Id.* at 125]

In *State v. Stiene*, 203 *N.J.Super.* 275 (App.Div.1985), defendant's DWI conviction was sustained on proof that he had been pushing a car along a highway while intoxicated. The court said:

> Following *Sweeney* and *Daly* we determine that we must focus upon defendant's intent. In *Daly*, if defendant had been found in the stationary vehicle with the intent to move it, there is no doubt from our reading of the opinion that a conviction would have been warranted. Therefore, the motion of the vehicle is not a limiting factor. We also agree ... that the engaging of the engine in a moving vehicle is not required for a conviction.
>
> Synthesizing these cases, it appears that when one in an intoxicated state places himself behind the wheel of a motor vehicle and not only intends to operate it in a public place, but actually attempts to do so (even though the attempt is unsuccessful) and there is the possibility of motion, he violates the statute. [203 *N.J.Super.* at 278–279]

*State v. Gately*, 204 *N.J.Super.* 332 (App.Div.1985), involved an "obviously drunk" DWI defendant found in a parked car "sprawled across the front seat, his head on the passenger side and his feet under the steering wheel." *Id.* at 334. Witnesses explained that he had been driven there and left by a friend when his behavior became intolerable. The court held that

"operation in fact" had not been proved and reversed a conviction of failure to submit to a breathalyzer test. *Id.* at 335.

*State v. Mulcahy*, 107 *N.J.* 467 (1987), held that a man, clearly drunk, who entered his car, started to put his keys in the ignition and was prevented from doing so by an arresting officer, was operating the car. The Court said:

> We therefore believe that when one enters a car and puts one's self in the driver's seat, that person is in control of the car and an intention to drive the vehicle, combined with physical movements to put the car in motion, constitutes operation, at least sufficient to warrant an arrest for purposes of submission to the sobriety test required by *N.J.S.A.* 39:4–50.4a. [at 479]

*Stiene* discussed, but did not decide, the question of whether a person could be convicted of DWI when occupying an inoperable car, noting that out-of-state authorities are divided on the issue. The court held, as indicated above, that a car which could be "rolled or pushed" was "operable." The present case raises the issue directly; DiFrancisco's vehicle could not be "rolled or pushed" and had to be towed; it was inoperable in every sense of the word.

Under these circumstances it cannot be said that DiFrancisco was "operating" his pickup truck at the time he was apprehended. He could not operate after he landed in the ditch and could not effectively have intended to operate. Intent not only was not proved, its presence, if proved, would be immaterial when operation was impossible. *Daly* required "the possibility of motion." 203 *N.J.Super.* at 279. Consequently, DiFrancisco cannot be convicted of *driving* while intoxicated on October 28, 1987 at 3:10 a.m.

Further, he cannot be convicted of DWI at any earlier time on that date. While the facts permit an inference that he was driving at some time prior to 3:10 a.m., there is no proof that he did so while he was intoxicated.

DiFrancisco must be found not guilty.