607 A.2d 1068

STATE OF NEW JERSEY, PLAINTIFF, v.
JASON B. DERBY, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Cumberland County

Decided March 30, 1992.

*Michael Brooke Fisher,* Cumberland County Prosecutor, for the plaintiff (*Raymond A. Marcolongo,* Assistant Prosecutor).

*Shapiro* and *Shapiro,* attorneys for the defendant (*Harold B. Shapiro,* Attorney).

SERATA, J.S.C.

Jason Derby was convicted by the Commercial Township Municipal Court of *N.J.S.A.* 39:3–40—operating a vehicle while suspended; *N.J.S.A.* 39:6B–2—operating an uninsured vehicle; and, *N.J.S.A.* 39:3–4—operating an unregistered vehicle, thus requiring the following penalties: *N.J.S.A.* 39:3–40—fine of $500.00, plus costs and suspension of his driving privilege for 6 months; *N.J.S.A.* 39:6B–2—a fine of $300.00, plus costs, suspension of his driving privilege for one year, and 15 days community service; *N.J.S.A.* 39:3–4—a fine of $20.00 plus costs, ATS surcharge of $1.00.

The issue of operation has only been considered in a few New Jersey cases. In the case at bar, the issue is whether defendant while occupying a vehicle under tow, without an engine was operating his motor vehicle within the meaning of *N.J.S.A.* 39:3–40, *N.J.S.A.* 39:6B–2, and *N.J.S.A.* 39:3–4. This court's research does not find a statutory definition for "operation".

*N.J.S.A.* 39:1–1 does however define "operator" as follows: *"Operator" means a person who is in actual physical control of a vehicle or street car.*

From the Municipal Court record this court finds the facts as follows: On July 22, 1991 defendant was observed by a New Jersey State Trooper in a vehicle that was being towed northbound on Hemlock Road in Laurel Lake, Commercial Township. The trooper observed the vehicle turn onto Dandelion Road at which point the vehicle's turn indicators and brake lights were engaged. The trooper testified he observed the defendant sitting behind the steering wheel of the vehicle in tow and opined that defendant was steering the vehicle. The record below also reveals that there was no engine in the towed vehicle. It is interesting to note that although the tow was illegal, there was no citation issued.

This court is thus faced with this issue. Whether occupying a vehicle while under tow, without an engine may be considered "operation" thereof within the meaning of the statute, if so, whether under the facts of this case, defendant's actions justify a conviction.

We find no New Jersey case law considering whether a vehicle in tow and incapable of being propelled under its own power fits into the definition of operation as set forth in *N.J.S.A.* 39:1–1 which is a requisite element necessary to obtain a conviction under *N.J.S.A.* 39:3–40, 39:3–4, and 39:6B–2. This question has, however, been considered by courts outside this jurisdiction and there are several cases on point. A person steering a disabled motor vehicle which is being towed by another car is not operating a motor vehicle within the meaning of a statute requiring such an operator to be licensed. *Dewhirst v. Connecticut,* 96 *Conn.* 389, 114 *A.* 100 (1921) This was a similar situation albeit a civil case. In *Dewhirst,* a motor vehicle had been towed for 25 miles, the person in that vehicle was sitting behind the steering wheel while the vehicle was being towed and was totally helpless so far as directing the

course or conduct of such car. The court in *Dewhirst* held that the person in the vehicle being towed was not operating the vehicle. Courts have been struggling with the definition of "operation" since horse-drawn vehicles were replaced by motor vehicles and it seems that we may not be getting any closer to the solution of this problem. A person who manipulates the controls of a car with no engine cannot be said to be operating such a car. *State v. Swift*, 125 *Conn.* 399, 6 *A.*2d 359 (1939). For further case law *see; State v. Ferrenti*, 22 *Conn.Supp.* 494, 175 *A.*2d 378 (1961); *State v. Duggan*, 290 *Or.* 369, 622 *P.*2d 316 (1981).

The few New Jersey cases interpreting the definition of "operator", *N.J.S.A.* 39:1–1, fall into two distinct categories. First, the definition that has developed under *N.J.S.A.* 39:4–50, Driving Under the Influence of Alcohol. "Operation" in this context has been broadened to address societal concerns caused by the damages that drunk drivers inflict on this State's roadways. Second, a less restrictive definition that has been applied to motor vehicle code and insurance violations promulgated under those sections of the New Jersey Statutes Annotated.

In *State v. Sweeney*, 77 *N.J.Super.* 512, 520, 187 *A.*2d 39 (App.Div.1962) the court addressed the issue of whether for the purposes of *N.J.S.A.* 39:4–50, the statutory definition of operation only envisioned those situations where the operator actually drives the vehicle. The court held it did not, and adopted a broader approach. Where the acts of the operator demonstrate physical control of the vehicle and those acts demonstrate an intent to put the vehicle into motion then the defendant operated the vehicle. The defendant in *Sweeney* entered the vehicle, turned on the ignition, started the motor in operation while behind the steering wheel. It is this control which justifies the inference of intent to operate. In *State v. Prociuk*, 145 *N.J.Super.* 570, 368 *A.*2d 436 (1976) the Court held there were three basic ways to show "operation" within the meaning of the statute proscribing operation of a motor vehicle while impaired: observation by the arresting officer, evidence of intent to drive

while in physical control of the vehicle, or confession by defendant that he was driving. There is also a requirement that the vehicle must at least be operable. In *Prociuk* the defendant was found within 150 yards of a vehicle which was, at the time the arresting officer arrived, temporarily inoperable due to lack of gas. Defendant disclosed to the arresting officer that he had just run out of gas on the ramp and he wanted the officer's assistance in obtaining more gas. The court determined it was clear from the defendant's statements to the officer that he was driving the vehicle shortly before his arrest, thereby sustaining a conviction of operating a motor vehicle while impaired. In *State v. Jeannette*, 172 *N.J.Super.* 587, 412 *A*.2d 1339 (Law Div.1980) the court held that intentional movement of a motor vehicle without engine power is sufficient operation to fall within the definition of operation as required under *N.J.S.A.* 39:4–50. The defendant in *Jeannette* was sitting on the seat of his motorcycle riding it down a slight incline for a short distance. The court went on to state that the public is to be protected from the operation by an intoxicated driver of a motor vehicle that has been placed in motion, whether powered by its engine or by gravity. In *State v. Grant*, 196 *N.J.Super.* 470, 483 *A*.2d 411 (App.Div.1984) police officers responded to a report pertaining to a suspicious vehicle possibly occupied by an intoxicated driver. Upon their arrival they observed a vehicle occupied by defendant, parked along the shoulder of the road with the defendant asleep behind the steering wheel in the driver's seat. The engine was not running and the headlights were off. The court applied *Kelly v. Gwinnell and Paragon Corp.*, 96 *N.J.* 538, 476 *A*.2d 1219 (1984) where the New Jersey Supreme Court held that a conviction for driving while impaired could be sustained on a showing that the defendant was found intoxicated at the wheel of a vehicle with the engine off at a position other than a normal one for parking. In *Grant* defendant was intoxicated, behind the wheel of a vehicle parked along the shoulder of a road, a place not usual for parking, thus raising the inference that defendant in exercising control over

the vehicle had operated the vehicle to the place where the officers observed it parked. Intoxication, control over the vehicle and its unusual place of rest taken together are of sufficient magnitude to sustain a conviction under *N.J.S.A.* 39:4–50. In *State v. Stiene*, 203 *N.J.Super.* 275, 496 *A.*2d 738 (App.Div.1985) the intoxicated defendant unsuccessfully attempted to move his vehicle which had run out of gas under its own power, and then later had his mother use another vehicle in an attempt to push the car back to his home. The court held when one in an intoxicated state places himself behind the wheel of a motor vehicle and not only intends to operate it in a public place, but actually attempts to do so and there is the possibility of motion, he violates the statute.

The trilogy of cases from the New Jersey Supreme Court *State v. Mulcahy*, 107 *N.J.* 467, 527 *A.*2d 368 (1987); *State v. Wright*, 107 *N.J.* 488, 527 *A.*2d 379 (1987); *State v. Tischio*, 107 *N.J.* 504, 527 *A.*2d 388 (1987) hold when a person enters a vehicle and puts himself in control of the vehicle and intends to drive the vehicle and there is some physical action that puts the vehicle in motion that defendant has operated a vehicle for the purposes of *N.J.S.A.* 39:4–50. In *State v. DiFrancisco*, 232 *N.J.Super.* 317, 556 *A.*2d 1307 (Law Div.1988), defendant was found slumped over the driver's seat, his foot on the brake, keys in the ignition and the engine warm. The front end of the truck was in a driveway, the bed of the truck in a ditch, defendant's breath had the strong odor of alcohol. At the time of defendant's arrest he was seated in a vehicle which could not be operated, and as such defendant was not operating the vehicle at the time of his arrest and since the vehicle was in a ditch could not have intended to operate the vehicle. The court held under those facts that operation was impossible and defendant could not be convicted under the driving while impaired statute.

A second line of cases has developed in New Jersey dealing with the interpretation of the definition of operation, these few cases deal with motor vehicle code and insurance violation. In

*Stupin v. Sanchez,* 113 *N.J.Super.* 84, 272 *A.*2d 761 (App.Div. 1971), plaintiff was on his way home from work when his tire went flat; he proceeded to fix the flat and was injured. The court held that the plaintiff was operating the car at the time of the accident since fixing a flat tire was part of operating the car to enable him to get home. In *Caldwell v. Kline,* 232 *N.J.Super.* 406, 557 *A.*2d 661 (App.Div.1989), the plaintiff's car blew a rod in the engine and had it towed to a garage for repair. It is the vehicle's temporary inoperability that plaintiff claims removes him from disqualification of *N.J.S.A.* 39:6–70 and 78. In *State v. DeMarco,* 157 *N.J.Super.* 341, 384 *A.*2d 1113 (App.Div.1978), the court held that a vehicle in a state of partial disassembly in a repair shop was a motor vehicle requiring certification of ownership and registration. A vehicle does not lose its character as such because it is temporarily inoperable, but a vehicle whose owner no longer intended to operate his vehicle would not be precluded from the fund, because the vehicle is more than merely temporarily inoperable.

These cases show that a vehicle, albeit temporarily inoperable, retains its character as a motor vehicle if the operator subjectively intended to restore its ability to operate. Conversely, a vehicle that is no more than a shell loses its character as a motor vehicle and is as such "inoperable."

█ It is this court's conclusion that the Legislature intended but one definition of operation as evidenced by the promulgation of *N.J.S.A.* 39:1–1. The distinction that has developed over the years in the interpretation of "operation" between cases involving the driving while impaired statute, *N.J.S.A.* 39:4–50 and those motor vehicle code and insurance cases should be eliminated. If the Legislature intended to differentiate the definition of operation creating varying standards, it should promulgate in the New Jersey Statutes Annotated separate and distinct classification defining operation for the purpose of driving while impaired and for those arising out of the motor vehicle code. In order to show operation a three prong

test must be met, the elements are: physical control over a vehicle, an intent to operate and an ability to do so; this prong requires at least that the vehicle be capable of operation.

Defendant was charged with driving while suspended, operating an uninsured vehicle and operating an unregistered vehicle. The Municipal Court below found defendant guilty on all three charges, finding in effect he was the operator of the vehicle in tow.

In the case at bar defendant was seated in the driver's seat, behind the steering wheel of a vehicle that was under tow. The defendant was clearly in physical control of the towed vehicle and as such the first prong of the test is satisfied. The defendant testified, in the court below, that he was in the towed vehicle to exercise control should it be required. Therefore, defendant subjectively intended to operate and as such the second prong of the test is met. Defendant, however, was in a vehicle that had no engine as it had been pulled earlier in the day because it was blown. It is axiomatic that in order to "operate", the vehicle must in some way be capable of operation. Here, the defendant was occupying a vehicle which could only be characterized as a shell; it was utterly and totally incapable of operation in every sense of the word. This vehicle, incapable of operation under its own power, cannot satisfy the third prong which requires an ability to operate.

It is the opinion of this court after carefully analyzing all of the facts and reviewing, at considerable length, the statutory authority and case law of this State as well as those from out-of-state jurisdictions, that defendant was not operating a vehicle. The application of the test outlined by this court to the facts pending clearly show that the vehicle in tow, without an engine, was incapable of operation, it then logically follows that defendant could not be said to be operating the vehicle; therefore, the holding of the Municipal Court of Commercial Township is reversed and defendant is found not guilty.

710

The prosecutor will prepare the appropriate order under the five-day rule.