**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1154-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN A. JEDRA,

    Defendant-Appellant.

_____

Submitted November 12, 2019 – Decided January 29, 2020

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. 17-27.

Greggory M. Marootian, attorney for defendant.

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

A Toms River Police Officer saw defendant John A. Jedra asleep in the driver's seat of his idling car parked in front of a convenience store at 4:00 a.m. After field sobriety tests and Alcotest results indicating defendant had a .15 blood alcohol content (BAC), he was charged with driving while intoxicated (DWI), N.J.S.A. 39:4-50 and given a summons for reckless driving, N.J.S.A. 39:4-96. The municipal court found defendant guilty as a second offender of DWI, based on its determination the State had proven beyond a reasonable doubt that defendant intended to operate his car and that he was intoxicated based on observation and his BAC. However, the court found him not guilty of reckless driving since he was not observed in a moving vehicle. Following a trial de novo in the Law Division, the trial judge issued an order and oral decision affirming the municipal court's conviction. We affirm.

I

We derive the salient facts from the Toms River municipal court trial, spread over two non-consecutive days. The State presented the testimony of Toms River Police Officers John Marsicano and Michael DeRosa, and current New Jersey State Trooper Kevin Alcott. Defendant presented the testimony of former State Trooper Joseph Tafuni.

At approximately 4:00 a.m. on October 1, 2016, Marsicano parked his police cruiser in front of a local convenience store. After exiting his vehicle to enter the store, Marsicano noticed defendant asleep in the driver's seat of an idling car properly parked in the store's parking lot. Upon leaving the store, Marsicano returned to his cruiser, engaged its motor vehicle recorder (MVR), and approached defendant's car. The MVR video (the video) depicting Marsicano's encounter with defendant and a transcript of the video were admitted into evidence during the trial.

Marsicano unsuccessfully tried multiple times to awaken the "deep sleep[ing]" defendant by "knocking" and "banging" on the driver's side window. Defendant eventually woke up when Marsicano opened the driver's side car door. Upon opening the door, Marsicano detected the odor of alcohol. He instructed defendant to turn off the car's engine, whereupon defendant fumbled with the key in the ignition. Instead of rotating the key into the off position, defendant instead reached for the car's clock and air vents, ultimately hitting the lock button for the car door. Marsicano directed defendant to the location of the keys and after defendant turned-off the engine, he re-ignited it.

Once the car was turned off, Marsicano asked defendant for his driving credentials. Defendant's movements were "slow and fumbling," with his voice

"slurred and slow," making him "hard to understand." Marsicano noticed defendant's eyes were "watery." Defendant's response to being asked if he had consumed any alcoholic beverages was indecipherable.

The video reveals the following colloquy:

> OFFICER MARSICANO: Where are you coming from?
>
> [DEFENDANT]: From New Jersey.
>
> OFFICER MARSICANO: Where?
>
> [DEFENDANT]: (Indiscernible)
>
> OFFICER MARSICANO: Do you know how long you've been here, sir?
>
> [DEFENDANT]: What, here?
>
> OFFICER MARSICANO: Yeah.
>
> [DEFENDANT]: At this place?
>
> OFFICER MARSICANO: Yes, at this place.
>
> [DEFENDANT]: Probably from, I don't know. I was (indiscernible).
>
> OFFICER MARSICANO: Do you have a reason why you're passed out in your vehicle for an extended period of time in front of the [convenience store]?
>
> [DEFENDANT]: Well, no, I don't want to say because, you know, I (indiscernible) that, you know, I was going through, obviously just like looking at it, going through

a couple hours because I'm like I was going to where it needs to be. [sic]

. . . .

OFFICER MARSICANO: How much have you had to drink?

[DEFENDANT]: Not much at all.

OFFICER MARSICANO: How much is not that much?

[DEFENDANT]: Really just a, maybe two hours okay with everything. [sic]

OFFICER MARSICANO: How much alcohol did you have to drink tonight, sir?

[DEFENDANT]: (No Audible Response).

Following this exchange, Marsicano stepped away from defendant for about three minutes, then asked him to step out of his vehicle.

By that time, DeRosa had arrived at the scene. DeRosa gave defendant a horizontal gaze nystagmus (HGN) test. Marsicano then had defendant complete field sobriety tests, which defendant failed. This, coupled with Marsicano's prior observations, led Marsicano to conclude defendant was intoxicated and his ability to operate a vehicle was impaired. DeRosa confirmed Marsicano's observations of defendant that took place after his arrival.

Defendant was taken to the police station and the Alcotest was administered, resulting in a .15 BAC. Defendant was charged with DWI and reckless driving.

Defendant's sole witness was Joseph Tafuni, a legal consultant specializing in DWI cases with twenty-eight years of service with the New Jersey State Police. Tafuni testified as an expert and challenged the field sobriety tests performed by Marsicano, the administration of the Alcotest, the Alcotest machine's methods and maintenance, and the accuracy of Alcotest's result. In rebuttal, the State called Alcott, who disputed the entirety of Tafuni's testimony.

The municipal court found defendant guilty of DWI but not guilty for reckless driving. In its oral decision, the court credited Marsicano's testimony, the MVR video, and the Alcotest results as proof beyond a reasonable doubt that defendant was legally intoxicated, and he had the intent to operate his car considering it was parked with the engine running. The court specifically noted Marsicano had to rouse defendant, the difficulty defendant had in turning off his car and getting out his documents, defendant's physical and speech characteristics, and the field sobriety tests results. The court imposed minimum fines and penalties for a second DWI offense.

Following trial de novo argument, the Law Division judge issued an order and oral decision affirming defendant's DWI conviction. The judge's decision recognized defendant challenged "every critical aspect of the State's case . . ." including, ". . . the issue of operation, more specifically that [the State was] not able to establish the nexus between operation and the defendant's alleged intoxication." The judge rejected defendant's contentions the State failed to prove intoxication based on the inadequacies of the field sobriety tests, the required twenty-minute observation before administering the Alcotest, and the BAC test results. Weighing the video and corresponding transcript, the judge found defendant had the intent to operate his car while intoxicated stating:

> In this instance . . . defendant was found in the driver's seat of a running vehicle in a [convenience store] parking lot at approximately 4 a.m. . . . [D]efendant was asleep behind the wheel of the vehicle and had to be woken by the officer. The officer had some difficulty in rousing . . . defendant.
>
> As noted by the results of the [video footage] . . . defendant's vehicle was, in fact, running. You could hear that on the officer's mic. You could also see that there was exhaust visibly emanating from the tailpipe. And the engine motor again was picked up on the officer's mic.
>
> So[,] the [c]ourt finds that there's no doubt that there was operation of the vehicle at the time that the officer observed it.

A-1154-18T1

The judge also pointed to the fact defendant restarted the car after being told by Marsicano to turn the car off. The judge concluded by stating that the combination of the officers' testimony and the video supported the municipal court's findings. The judge imposed the same sentence as the municipal court. Defendant was granted a stay of sentence pending appeal to this court.

Defendant appeals, raising a single point for our consideration:

> THE STATE DID NOT PROVE, BEYOND A REASONABLE DOUBT, THAT [DEFENDANT] OPERATED A MOTOR VEHICLE WHILE UNDER THE INFLUENCE IN VIOLATION OF, AND REQUIRED BY N.J.S.[A.] 39:4-50(A), OR ASSUMING ARGUENDO THAT THE STATE PROVED THE ELEMENT OF OPERATION, THE STATE DID NOT PROVE, BEYOND A REASONABLE DOUBT, A NEXUS BETWEEN THE TIME OF OPERATION AND THE BREATH TESTS OF JEDRA'S INTOXICATED CONDITION, A REQUISITE ELEMENT OF A DWI OFFENSE.

II

On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent findings of fact and conclusions of law but defers to the municipal court's credibility findings. State v. Robertson, 228 N.J. 138, 147, (2017).

Our assessment of the Law Division judge's factual findings is limited to whether the conclusions "could reasonably have been reached on sufficient

credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). Unlike the Law Division, which conducts a trial de novo on the record, Rule 3:23-8(a), we do not independently assess the evidence. State v. Locurto, 157 N.J. 463, 471 (1999). The rule of deference is more compelling where, such as here, the municipal and Law Division judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

We, however, owe no deference to the trial judge's legal conclusions, Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)), and exercise plenary review of the trial court's legal conclusions that flow from established facts, State v. Handy, 206 N.J. 39, 45 (2011).

"[A] person who operates a motor vehicle while under the influence of intoxicating liquor . . . or operates a motor vehicle with a blood alcohol

concentration of 0.08% or more by weight of alcohol in the defendant's blood" is guilty of DWI. N.J.S.A. 39:4-50(a). The term "operates" as used in N.J.S.A. 39:4-50(a) has been broadly interpreted. State v. Tischio, 107 N.J. 504, 513, (1987); State v. Mulcahy, 107 N.J. 467, 478-79 (1987).

A defendant need not be seen driving a vehicle in order to be convicted of DWI. "Operation may be proved by any direct or circumstantial evidence – as long as it is competent and meets the requisite standards of proof." State v. George, 257 N.J. Super. 493, 497 (App. Div. 1992). "The vehicle's operating condition combined with the defendant's presence behind the steering wheel permits the logical conclusion of an intent to drive." Ibid.

In State v. Sweeney, 40 N.J. 359, 360-61 (1963), our Supreme Court held a person 'operates' – or for that matter, 'drives' – a motor vehicle under the influence of intoxicating liquor, within the meaning of N.J.S.A. 39:4-50 and 39:4-50.1, when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle. In this case, the trial court could clearly infer such intent from the evidence.

For example, in <u>George</u> this court found the defendant had an intent to operate his idling truck parked in an empty parking lot at 11:45 p.m. with the headlights and windshield defroster on while he was in the driver's seat talking to a woman pedestrian. 257 N.J. Super at 497.

Based on the principles governing our review and the noted case law, we are satisfied defendant is guilty of DWI because there is sufficient, credible evidence present in the record that he had the intent to operate his car.

In the early hours of the morning, defendant was sleeping in the driver's seat of his vehicle, with the engine running, parked at a convenience store. Defendant smelled of alcohol, had difficulty responding to the officer's request to turn off his car engine, his speech was slow and slurred, his eyes were watery, he failed the field sobriety tests, and his BAC was above the legal limit. The totality of those circumstances supports the judge's determination that defendant was guilty of DWI.

To the extent we have not addressed any of defendant's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed. The stay of defendant's sentence shall expire in thirty days.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION          A-1154-18T1

11