## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2941-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHAZ DUNTON,

    Defendant-Appellant.

_____

> Argued March 18, 2025 – Decided April 7, 2025
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 22-018-RH.
>
> Jonathan E. Kohut argued the cause for appellant (Day Pitney, LLP, attorneys; Theresa A. Kelly and Jonathan E. Kohut, on the briefs).
>
> Tiffany M. Russo, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; Tiffany M. Russo, of counsel and on the brief).

PER CURIAM

Defendant appeals from an April 17, 2023 judgment of conviction entered after a trial de novo finding him guilty of Driving While Intoxicated (DWI), N.J.S.A. 39:4-50. Applying the relevant legal principles, we affirm defendant's conviction but remand for the court to resentence him.

I.

We detail the facts relevant to this appeal from the testimony provided by Patrolman Christopher Ordway at the probable cause hearing and municipal court trial. At approximately 2:18 a.m. on November 5, 2019, Patrolman Ordway responded to a report of a disabled vehicle parked in front of a pizzeria in Denville. Upon his arrival, Patrolman Ordway identified a black Toyota Corolla parked across several parking stalls. Before he approached the vehicle, Patrolman Ordway observed: (1) the vehicle was not running; (2) the interior and dashboard lights were on, which in his experience meant "the keys were in the ignition and the vehicle was or could be operated"; and (3) the hazard lights were on.

Based on his subsequent interaction with defendant, Patrolman Ordway believed he was under the influence of alcohol. As he explained at the probable cause hearing:

> Q. . . . And what were your initial observations of [defendant] himself?

A. He was seated in the driver's seat. The keys were in the ignition. Again, as I spoke with him[,] he indicated to me that he was having engine trouble, the vehicle had petered out. He was able to get it into this spot that he was in. When I asked him if he was able to turn the car on, because initially I was trying to assist him if he was having trouble to diagnose whatever issue he was having with the car. I asked him to turn it on . . . and the car did not start.

Q. Now, did you ask him where he was headed?

A. He said he was coming from home and he was on his way to see a friend in Hackettstown.

Q. Okay.
And did you make any observations of him, specifically your observations of him?

A. As I continued to speak with him I detected the strong odor of an alcoholic beverage from his breath. . . . [The] more I spoke with him[,] I detected slurred speech and droop[ing] eyes, bloodshot eyes. And at that point I believe[d] that it was possible he was under the influence.

Based on these observations, Patrolman Ordway requested defendant exit his vehicle so he could administer standard field sobriety tests. After administering the horizontal gaze nystagmus (HGN) test, Patrolman Ordway testified defendant displayed "six indicators" of intoxication.

Patrolman Ordway next asked defendant to perform the walk-and-turn test, and during the first phase, defendant "step[ped] out of line and step[ped]

3

out of position" indicating his possible intoxication. Defendant then stepped off the line while walking "several times" and failed to perform satisfactorily the heel-to-toe portion of the test, and "raised his arms for balance." Patrolman Ordway further explained when defendant came to the point of making the turn, he requested additional instructions and asked, "how to complete the remaining portion of the test." After Patrolman Ordway informed defendant again how to complete the test, defendant "missed stepping heel-to-toe with more than a two[-]inch gap at several points[,] and he stepped off of the line at several points."

Finally, Patrolman Ordway testified defendant successfully completed the instructional phase of the one-leg stand test but unsuccessfully performed the second phase of the test. Defendant initially used his arms for balance and placed his foot on the ground before attempting the test a second time, and defendant "almost fell over [and] . . . put his foot down at the [ten] second mark." Due to his observations of defendant during the field sobriety tests, Patrolman Ordway testified he "believe[d] that [defendant] was the operator of the vehicle, he was under the influence of alcohol[,] and his impairment was due to alcohol" and therefore arrested him.

At defendant's municipal court trial, Patrolman Ordway explained he was forced to administer the Alcotest to defendant in three separate municipalities.

A-2941-22

He initially performed the test in the Denville booking room, but the machine returned a control test failure, and he could "no longer use that machine in order to perform another [A]lcotest." Patrolman Ordway then traveled with defendant to the next closest municipality, Rockaway Borough, but received another control test failure. Finally, he and defendant traveled to Boonton, where he was able to procure a working Alcotest device.

Patrolman Ordway stated he "provided [defendant] with the New Jersey standard statement refusal form verbatim," and conducted a twenty-minute observation period of defendant and affixed a fresh mouthpiece to the Alcotest device. The first sample defendant provided was rejected because "[t]he minimum volume was not achieved." After waiting for the machine to clear, defendant provided sufficient body breath samples on the second and third attempts and resulting in a blood alcohol concentration (BAC) level of 0.10.

The municipal court judge issued an oral opinion in which he held the State met its burden beyond a reasonable doubt and found defendant guilty of DWI but not guilty of the remaining charges, specifically careless and reckless driving, N.J.S.A. 39:4-96 and -97. With respect to defendant's argument the State failed to prove beyond a reasonable doubt he operated a motor vehicle within the meaning of N.J.S.A. 39:4-50(a) because his car was "inoperable,"

A-2941-22

relying upon State v. Stiene, 203 N.J. Super. 275 (App. Div. 1985), the municipal court judge found there was no evidence defendant's vehicle was inoperable and "[t]he fact that his car stopped working" did not establish the car was incapable of movement. Thus, based upon this finding and "defendant's own admission he had intended to drive the vehicle," the municipal court judge found the State proved beyond a reasonable doubt defendant "operated" a motor vehicle within the meaning of N.J.S.A. 39:4-50(a). The municipal court judge accordingly suspended defendant's license for seven months, ordered he undertake twelve hours in the Intoxicated Driver Resource Center, required him to install an ignition interlock device in his vehicle, and imposed $690 in fees and fines.

Defendant appealed from his conviction and sentence to the Law Division. The court considered defendant's convictions and sentence de novo, affirmed the municipal court's decision, and explained its reasoning in a comprehensive fifty-two-page written opinion. After reviewing the municipal record, the underlying facts, the parties' contentions, and the applicable legal standards, the court found Patrolman Ordway "was dispatched and came upon [d]efendant to provide assistance as a proper application of the community[-]caretaking

function," and concluded he "had reasonable, articulable suspicion justifying his requests that [d]efendant exit the vehicle and perform field sobriety tests."

The court supported its decision in large part by crediting the testimony of Patrolman Ordway. First, the court highlighted the fact Patrolman Ordway testified "the interior lights were on which, based on his experience, meant that the keys were in the ignition. These observations clearly indicated that the vehicle and/or its driver were experiencing difficulties of some sort." The court emphasized Patrolman Ordway "observed: a strong odor of alcohol on [d]efendant's breath, slurred speech, and bloodshot and droopy eyes."

The court found "beyond a reasonable doubt that [d]efendant drove his vehicle before it ultimately stopped at Bloomfield Avenue outside of a pizzeria." In support of this conclusion, the court referenced the testimony of Patrolman Ordway in which he stated defendant admitted he had driven the vehicle before Patrolman Ordway encountered him and he planned on visiting a friend in Hackettstown.

The court next concluded defendant "operated the motor vehicle while intoxicated," and quoting State v. Kashi, 360 N.J. Super. 538, 545 (App. Div. 2003), aff'd, 180 N.J. 45 (2004), noted "[i]ntoxication may be proven 'through either of two alternative evidential methods: proof of a defendant's physical

condition or proof of a defendant's blood alcohol level." The court analyzed the State's burden under both methods.

With respect to the observational method, the court again credited Patrolman Ordway's testimony. It found defendant's "poor performance on the field sobriety tests, coupled with . . . observations made during his initial encounter with [d]efendant (detecting a strong odor of alcohol, slurred speech, bloodshot and droopy eyes)" sufficient to prove "by a preponderance of the evidence that there was probable cause to arrest [d]efendant for DWI." It also determined "that the State at trial – using non-BAC level proofs – proved beyond a reasonable doubt that [d]efendant drove while intoxicated."

In the alternative, the court also concluded the State proved defendant's guilt beyond a reasonable doubt through proof of his BAC results. Based upon the evidence in the record, including Patrolman Ordway's testimony and other foundational documents admitted at the municipal court trial, the court found the State satisfied its burden for admission of the BAC results consistent with State v. Chun, 194 N.J. 54 (2008). The court rejected defendant's argument Patrolman Ordway failed to wait the required two minutes in between the second and third tests in Boonton, and instead found "[Patrolman] Ordway credibly

testified that he properly waited until the machine cleared, re-read [d]efendant the instructions, and performed another test.  This is all <u>Chun</u> requires."[1]

Fourth, despite the approximately two-hour delay between defendant's initial encounter with Patrolman Ordway and the administration of the Boonton Alcotest, the court found defendant failed to demonstrate any resulting prejudice by the delay; "the Alcotest was given within a reasonable period and its results [were] admissible."  Finally, the court found defendant's argument the State violated its discovery obligations by failing to disclose purportedly exculpatory evidence including video from the Boonton police station booking room "without merit."  Specifically, the court explained "[d]efendant provide[d] no proof that any such video/audio exists[,] or that his attorney made any such discovery request or raised the issue of such a video/audio in the municipal court."

On April 17, 2023, the court sentenced defendant to:  (1) pay applicable fines, penalties, and fees; (2) a seven-month ignition interlock suspension period should he acquire a vehicle; (3) a seven-month forfeiture of his driver's license

---

[1]  There is nothing in the record to support the conclusion Patrolman Ordway did not wait more than two minutes between defendant's two breath tests. According to the alcohol influence report generated by the Alcotest device, the first sample was collected at 4:39 a.m. and the second at 4:42 a.m.

A-2941-22

and right to operate a motor vehicle; and (4) twelve hours at the Intoxicated Driver Resource Center. Due to defendant's financial circumstances, the court permitted him to pay his fines and fees in fifty-dollar monthly installments, an amount defendant confirmed he could pay. The court later denied defendant's request for a stay of his sentence pending appeal, a request we also denied.

This appeal followed in which defendant raises the following contentions:

> I. THE LAW DIVISION ERRED IN FINDING THAT [PATROLMAN] ORDWAY HAD A REASONABLE, ARTICULABLE SUSPICION SUFFICIENT TO EFFECT A STOP OF APPELLANT.
>
> II. THE LAW DIVISION ERRED IN FINDING THAT THE STATE PROVED OPERATION OF THE VEHICLE BY APPELLANT BEYOND A REASONABLE DOUBT.
>
> III. THE LAW DIVISION ERRED IN FINDING THAT [PATROLMAN] ORDWAY HAD PROBABLE CAUSE TO ARREST DEFENDANT.
>
> IV. THE LAW DIVISION ERRED IN FINDING THAT THE STATE PROVED BEYOND A REASONABLE DOUBT THAT APPELLANT OPERATED A VEHICLE WHILE INTOXICATED BASED ON THE TESTIMONY OF [PATROLMAN] ORDWAY.
>
> V. THE LAW DIVISION ERRED IN FINDING THAT THE STATE PROVED BEYOND A REASONABLE DOUBT THAT APPELLANT OPERATED A VEHICLE WHILE INTOXICATED UNDER THE PER SE STANDARD.

10

VI. [THE LAW DIVISION] ABUSED [ITS] DISCRETION BY SENTENCING APPELLANT, AN INDIGENT INDIVIDUAL TO AN UNREASONABLE MONTHLY PAYMENT PLAN (NOT RAISED BELOW).

VII. THE LAW DIVISION ERRED IN FINDING THAT THE STATE DID NOT COMMIT VIOLATIONS OF THE DISCOVERY RULES.

VIII. THE LAW DIVISION JUDGE ERRED BY SENTENCING APPELLANT UNDER THE CURRENT VERSION OF N.J.S.A. 39:4-50.[2]

II.

"Our role in an appeal such as this one is limited, in that we 'consider only the action of the Law Division and not that of the municipal court.'" State v. Adubato, 420 N.J. Super. 167, 175-76 (App. Div. 2011) (quoting State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001)). While "[t]he Law Division determination is de novo on the record from the municipal court, [see R.] 3:23-8(a), . . . the Law Division judge must give 'due, although not necessarily controlling, regard to the opportunity of the magistrate to judge the credibility of the witnesses.'" Id. at 176 (quoting State v. Johnson, 42 N.J. 146, 157 (1964)).

---

[2] We have reconstituted defendant's point headings to correspond to the manner in which we address the issues.

11                                                    A-2941-22

In turn, we consider only whether there is "sufficient credible evidence present in the record" to uphold the findings of the Law Division. Johnson, 42 N.J. at 162. We do not "weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Locurto, 157 N.J. 463, 472 (1999) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). Additionally, "[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Id. at 474 (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). However, the legal determinations of the Law Division judge are not entitled to any special deference, and we review those decisions de novo. State v. Ugrovics, 410 N.J. Super. 482, 487-88 (App. Div. 2009).

III.

There is find no merit to the contentions raised in defendant's first through seventh points and therefore we affirm substantially for the reasons stated by the court in its comprehensive, fifty-two-page written decision. We provide the following comments to explain and amplify our decision with respect to the arguments raised by defendant in points one through four, and six. We reach a

12

different conclusion, however, as to defendant's argument in point eight and remand for the court to resentence him.

A.

Defendant's contentions in point one that the court misapplied the community-caretaking doctrine are without merit. That doctrine, first enunciated by the Supreme Court in Cady v. Dombrowski, 413 U.S. 433, 493 (1973), is an exception to the warrant requirement based on the awareness that police officers "often are called on to perform dual roles," State v. Diloreto, 180 N.J. 264, 276 (2004). It "recognizes that police officers provide a wide range of social services outside of their traditional law enforcement and criminal investigatory roles." State v. Scriven, 226 N.J. 20, 38 (2016) (internal quotation marks and citations omitted).

The doctrine provides an independent justification for intrusions into a citizen's liberty that would otherwise require a showing of probable cause or reasonable and articulable suspicion of criminal behavior. Diloreto, 180 N.J. at 276. Our Supreme Court has found the community-caretaker role permits officers to "check on the welfare or safety of a citizen who appears in need of help on the roadway without securing a warrant or offending the Constitution." Scriven, 226 N.J. at 38 (citing Diloreto, 180 N.J. at 276).

13

The doctrine entails a fact-sensitive, two-part inquiry. First, a court must ask whether the officer has reacted to an objectively reasonable community concern. Id. at 39 (stating officers must have an "objectively reasonable basis" to stop a vehicle to provide aid or check a motorist's welfare). This concern must serve as a distinct motivation for the officer's conduct, divorced from any desire to further a criminal investigation. Ibid. In other words, community caretaking may not serve as a pretext for a warrantless intrusion into a citizen's liberty that does not satisfy another warrant exception. State v. Bogan, 200 N.J. 61, 77 (2009). However, the "divorce" between the two police functions "need only relate to a sound and independent basis for each role, and not to any requirement for exclusivity in terms of time or space." Ibid. (citation omitted). The State is required to prove the officers were acting objectively reasonably. Scriven, 226 N.J. at 38-39.

Second, the court must discern whether the actions taken by the officer pursuant to his community caretaking remained within the limited scope justified by that function. As with all police stops, the officer's conduct must be "reasonably related in scope to the circumstances which justified the interference in the first place." State v. Dickey, 152 N.J. 468, 476 (1998) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). Moreover, an officer's

"community[-]caretaking inquiry must not be 'overbearing or harassing in nature.'" State v. Drummond, 305 N.J. Super. 84, 89 (App. Div. 1997) (quoting State v. Davis, 104 N.J. 490, 503 (1986)).

The court correctly found that Patrolman Ordway lawfully approached defendant's vehicle under the community-caretaking exception. Patrolman Ordway, whose testimony we again note was deemed credible by both the municipal and Law Division judges, testified: (1) he was responding to a report of a disabled vehicle; (2) upon his arrival he observed defendant's vehicle parked across several parking stalls such that other vehicles could not have parked; (3) the vehicle was not running; (4) the interior and dashboard lights were on, which in his experience meant "the keys were in the ignition and the vehicle was or could be operated"; and (5) the hazard lights were on.

With respect to the first part of the Scriven test, Patrolman Ordway acted reasonably. He received a report of a disabled vehicle, witnessed defendant's vehicle parked across several parking stalls with the interior lights on but the engine not running, and saw the vehicle's hazard lights on. Patrolman Ordway acted in an objectively reasonable manner in approaching defendant's vehicle and offering to help. See State v. Smith, 251 N.J. 244, 262 (2022) (noting the community-caretaking exception "may be implicated where police observe

15

'something abnormal . . . concerning the operation of a motor vehicle'" (quoting State v. Cohen, 347 N.J. Super. 375 (App. Div. 2002), overruled on other grounds by Smith, 251 N.J. at 262)).

As to the second prong of the Scriven test, the initial steps taken by Patrolman Ordway were limited to the justifiable community-caretaking function of providing aid to the driver of a disabled vehicle. Patrolman Ordway approached defendant's vehicle, asked him "what the issue was[,]" and attempted to diagnose the problem with defendant's vehicle by requesting he attempt to start the engine.

B.

Contrary to defendant's contentions in point two, the court also correctly concluded the "State established beyond a reasonable doubt that [defendant] operated the vehicle in question on the morning of November 9, 2019." Relying on State v. Daly, defendant argues Patrolman Ordway's testimony "does not prove that [defendant] intended 'to drive or move the vehicle at the time.'" 64 N.J. 122, 125 (1973). We are unpersuaded.

A person is deemed to have been driving while intoxicated if that person "operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug." N.J.S.A. 39:4-50(a). The

16

State does not have to prove actual operation. State v. Ebert, 377 N.J. Super. 1, 10 (App. Div. 2005). Indeed, the Supreme Court has recognized that "operation" may be found from evidence that would reveal "a defendant's intent to operate a motor vehicle." State v. Tischio, 107 N.J. 504, 513 (1987). "Operation may be proved by any direct or circumstantial evidence—as long as it is competent and meets the requisite standards of proof." Ebert, 377 N.J. Super. at 10 (quoting State v. George, 257 N.J. Super. 493, 497 (App. Div. 1992)). Generally, the State may prove operation in three ways: (1) "actual observation of the defendant driving while intoxicated," (2) "observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated," or (3) "by [the] defendant's admission." Id. at 11 (citations omitted).

As we explained in State v. Thompson:

> [N.J.S.A. 39:4-50(a)] prohibits "operat[ion]" of a vehicle while under the influence. "Operation" has been interpreted broadly, [Tischio, 107 N.J. at 513-14]; State v. Mulcahy, 107 N.J. 467, 478 (1987); State v. Wright, 107 N.J. 488, 494-503 (1987); State v. Sweeney, 40 N.J. 359, 360-61 (1963), and encompasses more than just "driving" a vehicle. Operation, for example, includes sitting or sleeping in a vehicle, with the engine running, even when the vehicle isn't in motion. . . .Thus[,] an intoxicated person could be found guilty of violating N.J.S.A. 39:4-50(a), when running the engine without moving the vehicle, as here,

17

or by moving or attempting to move the vehicle without running its engine, see [Stiene, 203 N.J. Super. at 279]. . . . In short, operation not only includes the circumstances to which we have just referred but may also be established "by observation of the defendant in or out of the vehicle under circumstances indicating that the defendant had been driving while intoxicated." [Ebert, 377 N.J. Super. at 11]. For example, we sustained a DWI conviction where the defendant was not even in her vehicle but instead was looking for her vehicle in a restaurant parking lot while in an intoxicated state. See id. at 9-11. There is no doubt that an intoxicated and sleeping defendant behind the wheel of a motor vehicle with the engine running is operating the vehicle within the meaning of N.J.S.A. 39:4-50(a), even if the vehicle was not observed in motion; it is "the possibility of motion" that is relevant. Stiene, 203 N.J. Super. at 279.

[462 N.J. Super. 370, 374-75 (App. Div. 2020) (first alteration in original) (footnotes omitted), certif. denied, 246 N.J. 214 (2021).]

Here, defendant informed Patrolman Ordway "he was on his way to see a friend in Hackettstown," which clearly indicates defendant's "intent to operate a motor vehicle." Ibid. (quoting Tischio, 107 N.J. at 513). Additionally, we reject defendant's argument the State could not prove operation beyond a reasonable doubt because his vehicle was "completely inoperable." The fact defendant's vehicle was disabled at the time Patrolman Ordway approached him does not warrant reversal of his conviction. See Stiene, 203 N.J. Super. at 279 ("[W]hen one in an intoxicated state places [themselves] behind the wheel of a motor

18

vehicle and not only intends to operate it in a public place but actually attempts to do so (even though the attempt is unsuccessful) and there is the possibility of motion, [they] violate the statute."). Therefore, as both courts below correctly found, defendant's mechanical difficulties did not render the vehicle inoperable.

We have not required that the engine be engaged or that there be any movement of the vehicle to establish operation; instead, we focus on defendant's intent. Ibid.; State v. Morris, 262 N.J. Super. 413, 418-19 (App. Div. 1993). Here, not only is it clear defendant intended to operate his vehicle while intoxicated based upon his statement that he was traveling to see a friend in Hackettstown, the record does not support his claim that the vehicle was completely inoperable. Indeed, defendant informed Patrolman Ordway he had recently driven the vehicle before it "petered out" and the fact that the engine would not start at the time does not demonstrate the vehicle was incapable of being moved.

There is nothing in the record to show defendant's car was towed, the failure of the engine to turn over was permanent, or the alleged mechanical failure rendered the vehicle immovable. Further, unlike in State v. DiFrancisco, 232 N.J. Super. 317, 323 (Law Div. 1988), where the defendant's "vehicle could

not be 'rolled or pushed'" and "was inoperable in every sense of the word," here, there is nothing in the record to show defendant's vehicle could not be moved.

Defendant's reliance on Daly is misplaced.  In Daly, the Court found the State failed to prove the defendant intended to move the motor vehicle where he had been found sleeping in the parking lot of the tavern.  Id. at 124-25.  The defendant in Daly credibly testified he got into his car after leaving the tavern in order to sleep, reclined the seat, and turned on the motor to keep warm.  Id. at 124.  The Court held operation could not be inferred beyond a reasonable doubt as the defendant had not demonstrated an intent to drive.  Id. at 125.  Here, defendant clearly demonstrated an intent to drive by his words and conduct, which we have outlined above.

This is not a case like DiFrancisco where the vehicle was inoperable because it was in a ditch.  Here, an unidentified mechanical issue which caused the car to "peter out," without more, does not vitiate the possibility of movement by other means, such as pushing the vehicle as in Stiene.  Moreover, defendant admitted to driving the vehicle before Patrolman Ordway approached him.  As such, we reject defendant's contentions and conclude the court properly found defendant operated his vehicle within the meaning of N.J.S.A. 39:4-50(a).

C.

We also reject defendant's challenges to the court's factual findings and legal conclusions in point three because the court properly found there was probable cause to arrest defendant. "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Moore, 181 N.J. 40, 46 (2004) (alterations and omission in original) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)). "In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances and view those circumstances 'from the standpoint of an objectively reasonable police officer.'" State v. Basil, 202 N.J. 570, 585 (2010) (citations omitted). "[A] showing of probable cause to arrest for DWI only require[s] proof by a fair preponderance of the evidence." Karins v. Atlantic City, 152 N.J. 532, 559 (1998) (citations omitted).

Here, the court found Patrolman Ordway's credible testimony describing defendant's poor performance on the field sobriety tests, coupled with Patrolman Ordway's observations made during his initial encounter with defendant (detecting a strong odor of alcohol, slurred speech, bloodshot and droopy eyes),

21

were sufficient to meet the State's burden of proving by a preponderance of the evidence that there was probable cause to arrest defendant for DWI. We find no basis to disturb these findings or the legal conclusion that flow from them.

D.

For similar reasons, we discern no error in the court's determination defendant violated N.J.S.A. 39:4-50 under the observational standard of proof based on the testimony of Patrolman Ordway and his observations on the morning of November 5, 2019. We are unpersuaded by defendant's contentions to the contrary in point four.

Violation of N.J.S.A. 39-4:50 can be proven in either of two alternative methods: (1) proof of a defendant's blood alcohol level; or (2) proof of a defendant's physical condition. Kashi, 360 N.J. Super. at 545. Under the second method, "[t]he statute does not require as a prerequisite to conviction that the accused be absolutely 'drunk' in the sense of being sodden with alcohol. It is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected." State v. Nemesh, 228 N.J. Super. 597, 608 (App. Div. 1988) (citing State v. Emery, 27 N.J. 348, 355 (1958)). As it relates to intoxicating liquor specifically, "under the influence" means a condition "which so affects the judgment or control of a

motor vehicle operator as to make it improper for [them] to drive on the highway." State v. Tamburro, 68 N.J. 414, 421 (1975).

An officer's subjective observation of a defendant is a sufficient ground to sustain a DWI conviction. See State v. Cryan, 363 N.J. Super. 442, 456-57 (App. Div. 2003) (sustaining DWI conviction based on observations of defendant's bloodshot eyes, hostility, and strong odor of alcohol); Morris, 262 N.J. Super. at 421 (finding evidence of slurred speech, abrasive demeanor, disheveled appearance, bloodshot eyes and alcoholic odor on defendant's breath sufficient to sustain a DWI conviction).

Additionally, the failure of a defendant to perform adequately on balance and coordination tests may be sufficient to prove "a defendant guilty beyond a reasonable doubt of DWI." State v. Liberatore, 293 N.J. Super. 580, 589 (Law Div. 1996) (citing State v. Slinger, 281 N.J. Super. 538, 543 (App. Div. 1995)). A combination of various factors is enough to support the conclusion that a defendant was driving under the influence of alcohol. See State v. Cleverley, 348 N.J. Super. 455, 465 (App. Div. 2002) (sustaining DWI conviction based on officer's observation of the defendant's driving without headlights, inability to perform field sobriety tests, combativeness, swaying, and detection of odor of alcohol on the defendant's breath); Oliveri, 336 N.J. Super. at 251-52 (sustaining

DWI conviction based on officer's observations of watery eyes, slurred and slow speech, staggering, inability to perform field sobriety tests, and defendant's admission to drinking alcohol earlier in the day), overruled on other grounds by State v. Clancaglini, 411 N.J. Super. 280 (App. Div. 2010).

We discern no error with the court's conclusion that the State proved defendant's guilt, beyond a reasonable doubt, under N.J.S.A. 39:4-50 utilizing the observational method. Again, both the municipal court and the Law Division judge found Patrolman Ordway credible. Patrolman Ordway testified he "detected the strong odor of an alcoholic beverage from [defendant's] breath," defendant slurred his speech, and defendant had bloodshot and droopy eyes. He further testified defendant: (1) displayed "six indicators" of intoxication under the HGN test; (2) "needed his arms to balance at points, he missed stepping heel-to-toe with more than a two[-]inch gap at several points[,] and he stepped off of the line at several points" during the walk-and-turn test; and (3) "almost fell over" and "put his foot down at the [ten] second mark" during the one-leg stand test.

E.

In point six, defendant argues the court erred when it sentenced him to a fifty-dollar per month monthly payment plan. Again, we are unpersuaded.

We review defendant's sentence for abuse of discretion. <u>State v. Pierce</u>, 188 N.J. 155, 166 (2006). There was no such abuse with respect to the court ordering defendant, as part of his sentence, to repay his applicable fines and penalties pursuant to a fifty-dollar monthly payment plan in light of his precarious financial situation. The court considered defendant's financial circumstances, including his inability to purchase a vehicle, and accordingly inquired if defendant could pay fifty dollars per month to address the court ordered fines and penalties. Defendant responded in the affirmative and we find nothing in the record to indicate such a payment plan was "unreasonable." We are satisfied the nominal monthly fee imposed was a proper exercise of the court's discretion.

F.

In point eight, defendant contends the court erred by requiring him to install an ignition interlock device on his vehicle. Specifically, he notes at sentencing the court stated, "installation of the ignition interlock device was a 'mandatory' part of sentencing under N.J.S.A. 39:4-50(a)(1)(ii)."

The current version of N.J.S.A. 39:4-50(a)(1)(ii) provides for a first offense "in the case of a person whose blood alcohol concentration is 0.10 percent or higher but less than 0.15 percent, the person shall forfeit the right to

25

operate a motor vehicle over the highways of this State until the person installs an ignition interlock device." At the time of defendant's arrest, however, the statute did not reference the mandatory installation of an ignition interlock device for a first-time offender who registered a BAC of 0.10 percent or higher. See N.J.S.A. 39:4-50 (2019).

As noted, at sentencing the court stated that the installation of the ignition interlock device was a "mandatory" part of sentencing under N.J.S.A. 39:4-50(a)(1)(ii). The court reached this conclusion based on defendant's 0.10 BAC, a finding we do not disturb. The version of the statute in effect when defendant was arrested on November 5, 2019, however, did not reference ignition interlock devices but more importantly did not state such a device was a mandatory part of the sentence for an individual found guilty under that subsection of the statute. See N.J.S.A. 39:4-50(a)(1)(ii) (Nov. 2019). The State agrees with defendant's position that the court mistakenly asserted imposition of an ignition interlock suspension period was mandatory.

Because it appears the court relied upon an incorrect version of N.J.S.A. 39:4-50 when it sentenced defendant, we remand this matter for re-sentencing in accordance with the version of the statute in effect on November 5, 2019. See State v. Scudieri, 469 N.J. Super. 507, 520 (App. Div. 2021) (holding L. 2019,

26

c. 248, the 2019 amendments at issue, do not apply retroactively because the Legislature limited the amendment's application to offenses occurring on or after a future effective date).  Nothing in our opinion should be interpreted as a reflection as our views on the outcome of the remand proceeding.

To the extent we have not specifically addressed or referenced any of defendant's remaining arguments, it is because we have concluded they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed in part, reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division